**OJAI UNIFIED SCHOOL DISTRICT; Ventura County Superintendent of Schools, Plaintiffs–Appellees,**

v.

**Bion JACKSON, a minor; Elizabeth Jackson; Richard W. Jackson, Defendants–Appellants,**

**California Special Education Hearing Office, Raymond C. Brown; California State Dept. of Education; Bill Honig; State Superintendent of Public Instruction; State of California, Defendants.**

No. 91–56361.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1992.

Decided Sept. 15, 1993.

Sharon A. Watt, Filarsky & Watt, Ventura, CA, for plaintiffs-appellees.

David R. Ellison, Ellison, Hinkle & Bayer, Ventura, CA, for defendants-appellants.

Before: CANBY, BOOCHEVER and THOMPSON, Circuit Judges.

CANBY, Circuit Judge.

This appeal involves a dispute over the appropriate educational placement for Bion Jackson under the Individuals with Disabili-

ties Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*[1] The district court granted summary judgment in favor of the Ojai Unified School District ("School District") and the Ventura County Superintendent of Schools ("Superintendent") (collectively "the school officials"). In so doing, the district court overruled an administrative hearing officer's decision that required Bion to be placed in a private school at public expense. We reverse and remand.

## I. STATUTORY FRAMEWORK

Because this appeal requires us to interpret a complex web of federal and state statutes and regulations, a brief summary of the legal framework is necessary. The IDEA provides federal funds to assist state and local agencies in educating children with disabilities, but conditions such funding on compliance with certain goals and procedures. 20 U.S.C.A. § 1412 (West 1990 & Supp.1993); *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 179–80, 102 S.Ct. 3034, 3037, 73 L.Ed.2d 690 (1982) (describing evolution and major provisions of the act). The IDEA's primary purpose is "to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs[.]" 20 U.S.C.A. § 1400(c) (West Supp.1993). This purpose is achieved through the development of an individualized education program ("IEP") for each child with a disability. 20 U.S.C.A. § 1401(a)(18)(D) (West 1990). The IEP is crafted annually by a team that includes a representative of the local educational agency, the child's teacher and parents, and, in appropriate cases, the child. 20 U.S.C.A. § 1414(a)(5) (West Supp.1993); 34 C.F.R. § 300.343(d) (1992). The IEP document must contain: information regarding the child's present levels of performance; a statement of annual goals and short-term instructional objectives; a statement of the specific educational services to be provided and the extent to which the child can participate in regular educational programs; and objective criteria for measuring the student's progress. 20 U.S.C.A. § 1401(a)(20) (West Supp.1993); 34 C.F.R. § 300.346 (1992).

In addition to these substantive provisions, the IDEA contains numerous procedural safeguards. In particular, the IDEA requires that the parents or guardians of a disabled child be notified of any proposed change in "the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child," and that they be permitted to bring a complaint about "any matter relating to" such evaluation and educational placement. 20 U.S.C.A. § 1415(b)(1)(C)–(E) (West 1990). When a complaint is made, the child's parents are entitled to "an impartial due process hearing" conducted either by the state or local educational agency, or an intermediate educational unit, as determined by state law. 20 U.S.C.A. § 1415(b)(2) (West 1990). In California, the hearing is "conducted by a person knowledgeable in the laws governing special education and administrative hearings[.]" Cal.Education Code § 56505(c) (West 1989 & Supp.1993). After the administrative hearing officer renders a decision, "[a]ny party aggrieved by the findings and decision" has the right to bring a civil action in state or federal court. 20 U.S.C.A. § 1415(e)(2) (West 1990).

## II. FACTUAL & PROCEDURAL BACKGROUND

At his birth on February 12, 1979, Bion Jackson suffered from rubella syndrome, which left him deaf and blind. Bion also was afflicted with other health problems; he remained hospitalized for the first two years of his life and spent his third year in a respite facility, where his mobility was extremely limited. As a result of these physical problems, Bion has been developmentally disabled since infancy. In 1982, Bion was adopted by Elizabeth and Richard Jackson, who live in Ojai, California. In June 1982, Mrs. Jackson met with school officials to

1. When this case was filed, the IDEA was known as the "Education of the Handicapped Act." The name of the act was changed to the "Individuals with Disabilities Education Act" effective Octo- ber 1, 1990. Education of the Handicapped Act Amendments of 1990, Pub.L. No. 101–476, § 901(a), 104 Stat. 1103, 1141–42 (1990).

develop an initial IEP for Bion, and he subsequently was enrolled in a day program for severely disabled students at the Boswell School, a public school located in Ventura County. Bion remained a student in the Boswell School's day program until 1989.

In April 1989, school officials notified Mrs. Jackson that the Boswell School would close at the end of the school year, and that, for the 1989–1990 school year, Bion would be reassigned to a class for disabled students at the Penfield School, another public school in Ventura County. On May 31, 1989, the Jacksons met with school officials to develop an annual IEP for Bion, and the School District reiterated its intention to place Bion in the special day class at the Penfield School.[2] The Jacksons, however, refused to send Bion to Penfield and requested instead that he be placed in a private school, at the School District's expense.[3] When school officials opposed this request, the Jacksons sought mediation to determine whether the Penfield School was an appropriate placement for Bion. In September 1989, the parties submitted their dispute to a mediator but could not resolve it. Instead, as a result of the mediation, they determined that an administrative hearing was necessary and framed the issues as follows:

1. Has the Ojai Unified School District offered an appropriate educational program in a safe environment for Bion Jackson?

2. If not, should the District be required to identify a non-public school program which can provide Bion with an appropriate program in a safe environment and to place Bion in that program?

In November 1989, a hearing officer from the California Special Education Hearing Office ("CSEHO") held the first hearing on the case and ordered the California School for the Blind ("CSB") to conduct an independent educational assessment of Bion. The CSB conducted this assessment in January 1990 and reported that:

Bion is lacking in any residual use of both vision and hearing. He is extremely limited in his ability to physically assess the environment. His experiences are limited to what is brought directly to him or what he is directly exposed to. Bion needs activities that are functional and meaningful to his immediate needs and capabilities....

Because of Bion's sensory losses, tactual and kinesthetic communication appear to be the only modes of communication that have meaning to Bion. Since educators or caregivers are required to be in physical contact, one-to-one teaching should be highly stressed. This approach could be best implemented within a program specifically designed for deaf/blind students.

The CSB assessment, however, did not lead to a resolution of the parties' dispute over whether the Penfield School was an appropriate placement for Bion. Therefore, in April and June of 1990, Raymond C. Brown, a hearing officer for the CSEHO, held additional hearings to answer the questions engendered by the mediation. In an order issued on August 14, 1990, the hearing officer found that the Penfield School was not an appropriate placement for Bion within the meaning of the IDEA. During the hearings, Mrs. Jackson had requested that Bion be placed at the Foundation for the Junior Blind ("FJB"), a private school in Los Angeles. The evidence, however, was not sufficient to allow a determination whether the FJB would be an appropriate placement. The hearing officer therefore stated that he would retain jurisdiction over the case until Bion was placed in a nonpublic school, and gave the School District and the Superintendent forty-five days "to identify a state certified nonpublic school which can provide Bion with an appropriate program in a safe environment and to place Bion in that school."

On September 24, 1990, Marty Babayco, the School District's Director of Special Education, wrote to the hearing officer and re-

---

2. The May 31, 1989 IEP document does not refer to the Penfield School. Nevertheless, it is undisputed that Penfield was the School District's proposed placement for Bion.

3. The Jacksons have continued to oppose the Penfield School placement. Therefore, while this case has been wending its way through the administrative hearings and the courts, Bion has not attended school since the summer of 1989.

ported that he had contacted several state experts, all of whom had recommended the FJB as the only nonpublic school that could serve Bion's needs. As of September 1990, however, the FJB neither had any openings in its residential program nor expected to have any during the 1990–1991 school year. Babayco further stated that he had been unable to locate any other nonpublic school that had a program suited to Bion's needs.

■ On November 1 and December 18, 1990, the hearing officer held two additional hearings, via telephone, to seek a resolution of this dilemma. During the first telephone hearing, the parties discussed several placements for Bion that might comply with the hearing officer's prior decision, including a day program at the FJB. The Jacksons stated that Bion's grandparents, who live approximately twenty miles from the FJB, had offered to house Bion and his caretaker if Bion were enrolled in the FJB day program. The hearing officer requested that the Jacksons present him with additional information regarding the costs associated with this option, and the parties agreed to convene another telephone hearing after the hearing officer had considered this information. At the second telephone hearing, the parties reviewed the estimated costs of the FJB day program. On January 2, 1991, the hearing officer issued a supplemental decision ordering the School District and the Superintendent to enroll Bion in the FJB's day class and to house him with his grandparents. The school officials were required to pay all costs associated with this placement including: tuition, transportation, caretaker fees, room, and board.[4]

Meanwhile, on September 13, 1990, the School District and the Superintendent had filed this action in the district court challenging the hearing officer's decision that the Penfield School was not an appropriate placement for Bion. On February 11, 1991, they filed a first amended complaint challenging both the hearing officer's initial decision and the January 1991 supplemental order. On September 17, 1991, the district court rejected all of the hearing officer's conclusions and granted summary judgment in favor of the School District and the Superintendent. The Jacksons appealed the judgment.

## III. AN APPROPRIATE PLACEMENT

### A. District Court's Grant of Summary Judgment

The Jacksons contend that the district court erred by granting the school officials' motion for summary judgment. They argue that there are disputed issues of material fact, and that the School District and the Superintendent are not entitled to judgment as a matter of law.

■ Our resolution of this issue requires an explanation of the judicial review process created by the IDEA. In an action challenging an administrative decision, the IDEA provides that "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C.A. § 1415(e)(2) (West 1990). Thus, judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review. *See, e.g., Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C.Cir.1988) ("the district court's authority under § 1415(e) to supplement the record below with new evidence, as well as Congress's call for a decision based on the 'preponderance of the evidence,' plainly suggests less deference than is conventional [in the review of agency actions]"); *Town of Burlington v. Department of Educ.,* 736 F.2d 773, 791 (1st Cir. 1984) ("Congress intended courts to make

---

4. The supplemental order stated that it was effective only until the end of the 1990–1991 school year, including the extended school year. Although that school year has ended, we have jurisdiction over this appeal because "[j]udicial review invariably takes more than nine months to complete, not to mention the time consumed during the preceding state administrative hearings." *Rowley,* 458 U.S. at 186–87 n. 9, 102 S.Ct. at 3041 n. 9. Therefore, because the dispute between the parties is capable of repetition yet evading review, this appeal is not moot. *See id.*

bounded, independent decisions—bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court"), *aff'd sub nom. Sch. Comm. v. Department of Educ.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). Nevertheless, when reviewing state administrative decisions, "courts must give 'due weight' to judgments of education policy[.]" *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir.1987) (quoting *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051). Therefore, the IDEA does not empower courts to " 'substitute their own notions of sound educational policy for those of the school authorities which they review.' " *Gregory K.*, 811 F.2d at 1311 (quoting *Wilson v. Marana Unified Sch. Dist.*, 735 F.2d 1178, 1183 (9th Cir.1984) (citing *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051)). "How *much* deference to give state educational agencies, however, is a matter for the discretion of the courts[.]" *Gregory K.*, 811 F.2d at 1311 (emphasis in original).

Here, conducting its review of the administrative proceedings with this unusual mixture of discretion and deference, the district court decided to grant the school officials' motion for summary judgment and adopt their proposed "Statement of Uncontroverted Facts and Conclusions of Law." The district court's grant of summary judgment in this case is problematic, however, because disputed issues of material fact clearly exist.[5] The district court purported to make findings of undisputed facts, but the court actually rendered findings of fact on issues that had been disputed in the administrative hearings; these issues, moreover, had been decided adversely to the School District and the Superintendent by the hearing officer. Although this procedure is permissible under the IDEA, it is not a true summary judg-

ment procedure. Instead, the district court essentially conducted a bench trial based on a stipulated record. Accordingly, we conclude that, because the district court already has performed a de facto bench trial, a remand for trial would serve no useful purpose in this case. The parties concede that the district court had before it all of their evidence regarding the issues in dispute; the record before us is therefore complete. Bion already has lost four years of schooling during the pendency of the administrative and judicial proceedings; we cannot sanction any additional, unnecessary delay. We therefore treat this case as having been tried to the district court on a stipulated record.[6]

**B. Additional Evidence Presented to the District Court**

Before turning to the merits of this appeal, we must first resolve a dispute over the contents of the record. The Jacksons contend that the district court erred by allowing the school officials to introduce evidence of an alternative placement that had not been considered during the administrative proceedings. We disagree.

■ As we already have pointed out, the IDEA provides that "the court shall receive the records of the administrative proceedings, *shall hear additional evidence at the request of a party*, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. § 1415(e)(2) (emphasis added). This court has not yet construed the scope of the statute's "additional evidence" provision. In its well-reasoned decision on this issue, the First Circuit held that:

> We construe "additional" in the ordinary sense of the word, *Perrin v. United States,*

**5.** For example, the parties dispute: the amount of progress Bion has made during his seven years in the public school system toward attaining the goals set forth in his IEPs; whether the teacher of the class at the Penfield School was adequately qualified to teach a deaf/blind student; and whether the Penfield School could provide sufficient instructional services to meet Bion's unique educational needs.

**6.** We hold only that summary judgment was not appropriate in this case; we do not suggest that

summary judgment could never be used in IDEA cases. *Cf. Victoria L. v. District Sch. Bd. of Lee County,* 741 F.2d 369, 372 (11th Cir.1984) (rejecting the argument that the IDEA precludes the use of summary judgment and noting that "[n]othing in the language or legislative history of the [IDEA] suggests that Congress intended to dispense with the wholesome utility of summary judgment") (quotation omitted). We express no opinion on this issue.

444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1980), to mean supplemental. Thus construed, this clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of "additional." We are fortified in this interpretation because it structurally assists in giving due weight to the administrative proceeding, as *Rowley* requires. *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051.

\* \* \* \* \* \*

The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing. The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

\* \* \* \* \* \*

The determination of what is "additional" evidence must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*. A practicable approach, we believe, is that an administrative hearing witness is rebuttably presumed to be foreclosed from testifying at trial. . . . In ruling on motions for witnesses to testify, a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources.

*Town of Burlington,* 736 F.2d at 790–91 (footnotes omitted).[7] We agree with the First Circuit's exposition of this statutory provision, and we adopt its standard for the

admission of additional evidence in IDEA cases.

To support their motion for summary judgment, the School District and the Superintendent submitted affidavits from Marty Babayco and Diana Novak regarding the educational programs available at the DeAnza Middle School, a public school located in Ventura County.[8] This evidence was presented because nearly a year had passed since the hearing officer had rendered his initial decision, and Bion was by then older than the other students at the Penfield School. Accordingly, Babayco and Novak stated that DeAnza, which serves older students, would be an appropriate placement for Bion. Under the standard that we have now adopted, the district court has discretion to admit additional evidence "concerning relevant events occurring subsequent to the administrative hearing." *Id.* at 790. Because the evidence at issue here fits within this category, we find no error in the district court's decision to admit it.

## C. The Penfield School Placement

■ The Jacksons argue that the district court failed to give sufficient weight to the hearing officer's findings and, in particular, to his conclusion that the Penfield School was not an appropriate educational placement for Bion. Because "[w]e review *de novo* the appropriateness of a special education placement", *Gregory K.*, 811 F.2d at 1314, "we need not consider how much weight the trial court gave or ought to have given to the administrative findings", *id.* at 1311. "Instead, we address this issue to determine how much weight we are to give the administrative findings[.]" *Id.*

■ In *Gregory K.*, this court adopted the First Circuit's standard for determining the degree of deference owed to the administrative findings:

"The traditional test of findings being binding on the court if supported by substantial evidence, or even a preponderance

---

7. The First Circuit found no legislative history to guide its construction of the "additional evidence" provision. *Town of Burlington,* 736 F.2d at 790 n. 20.

8. Novak had testified at the administrative hearings; Babayco had assisted with the presentation of the School District's case.

of the evidence, does not apply. This does not mean, however, that the findings can be ignored. The court, in recognition of the expertise of the administrative agency, must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue. After such consideration, the court is free to accept or reject the findings in part or in whole."

*Id.* at 1311 (quoting *Town of Burlington,* 736 F.2d at 792); *accord Ash v. Lake Oswego Sch. Dist.,* 980 F.2d 585, 587–88 (9th Cir. 1992). Despite their discretion to reject the administrative findings after carefully considering them, however, courts are not permitted simply to "ignore the administrative findings." *Ash,* 980 F.2d at 588; *see also Kerkam,* 862 F.2d at 887 (although courts are not required to defer to an administrative decision, "[d]eference to the hearing officer makes sense in a proceeding under the [IDEA] for the same reasons that it makes sense in the review of any other agency action—agency expertise, the decision of the political branches (here state and federal) to vest the decision initially in the agency, and the costs imposed on all parties of having still another person redecide the matter from scratch").

■ Here, the administrative hearing officer heard testimony from: Elizabeth Jackson, Bion's mother; Fran Larsen, Bion's physician since 1982; David Gransee, Director of the Program for the Hearing Impaired at Camarillo State Hospital; Diana Novak, Director of Special Education for the Superintendent; Teri Norrdin, a nurse at the Boswell School; Lois Carbone, school psychologist at Boswell, and Saroulta Dala and Cathleen Burton, Bion's teachers at Boswell. Furthermore, the hearing officer considered extensive documentary evidence, which included fourteen IEP documents covering the period from June 1982 through May 1989; numerous progress reports written by Bion's teachers at the Boswell School; health and medical information; assessments of Bion performed by the CSB in 1982 and 1990; and materials describing the educational programs offered at both the FJB and the Penfield School. After summarizing all of this evidence, the hearing officer found that:

> [A]fter seven years in the public school system in Ventura County, Bion still does not have a language, is not toilet-trained, cannot feed himself, cannot walk, and has developed very few self-help skills. These facts exist despite the diligent efforts of school district staff to educate Bion. Ms. Novak testified that no student receives more designated instruction and services than Bion.

Our review of the administrative record reveals that the hearing officer's findings are supported by a preponderance of the evidence. Indeed, the "statement of uncontroverted facts", which was prepared by the school officials and adopted by the district court, is consistent with the hearing officer's factual findings regarding Bion's level of functioning, although it speaks in far more general terms than did the hearing officer's decision.[9] Accordingly, we accept in their entirety the hearing officer's factual findings concerning Bion's condition and development. *See Gregory K.,* 811 F.2d at 1311 (after considering the administrative record, "the court is free to accept or reject the findings in part or in whole") (quotation omitted).

The real controversy between the parties stems from the hearing officer's conclusion that the public school program had not provided Bion with the free appropriate public education required by the IDEA. "An 'appropriate' public education does not mean the absolutely best or 'potential-maximizing' education for the individual child.... The states are obliged to provide 'a basic floor of opportunity' through a program 'individually designed to provide educational benefit to the handicapped child.'" *Gregory K.,* 811 F.2d

---

9. For example, the district court found that:
   6. At the time of the May 31, 1989 IEP meeting[,] special education and services eligibility of Bion Jackson was based on the following handicapping conditions, deaf and blind; developmental delay and multi-handicapped.

7. The eligibility for special education was based upon the facts that Bion Jackson has no vision or hearing; is not ambulatory and is functioning far below his chronological age.

at 1314 (quoting *Rowley,* 458 U.S. at 197 n. 21, 200–01, 102 S.Ct. at 3047–48 n. 21). The hearing officer applied this legal standard in reaching his decision. He stated that "[t]he first consideration pertains to 'educational benefit.' Will a placement at Penfield School meet the *Rowley* test with regard to 'benefit?'" Having thus posed the relevant question, the hearing officer concluded that:

[D]eciding the question of educational benefit in this case is difficult in that it is not clear what Bion's learning capacity actually is. However, school district witnesses, [CSB] assessors, and Bion's mother are optimistic that some progress is possible, given the right circumstances.

The evidence presented reveals that Bion has been receiving individually designed instruction and services from the district. Furthermore, school district teachers commensurate with their expertise have expended great effort to educate Bion, given his numerous handicaps. A review of the 1982 [CSB] assessment ..., all IEPs and their supplemental documents ..., and the 1990 [CSB] assessment ... brings into question whether or not, in an eight-year period, Bion has received the basic level of educational benefit contemplated by state and federal laws. If not, he should not be continued in the same type of program at Penfield School. The level of benefit is difficult to ascertain in this case as there are no written grades to measure educational accomplishment, only goals and objectives and the testimony of witnesses. Additionally, Bion is functioning at such a low level that his achievements are difficult to measure or quantify.

The IEPs ... contain goals and objectives for each year. Although goals and objectives are not guarantees, they are targets that teachers and therapists strive to reach. In Bion's case, some of the goals have been reached; however, the most important ones have not. A review of what has *not* happened may be the best way to address the level of educational benefit thus far. Bion is now 11-years-old and still has no language, which is of paramount concern. He has for all practical purposes no way of communicating his

needs. Bion's mother stated that she had never seen him sign independently; his teachers noted limited signing which they think he understands. The 1990 [CSB] assessment indicated that the assessors think Bion has the capacity to learn to sign.

Bion is not toilet-trained despite the efforts put forth by teachers and aides to develop this capability over a seven-year period. Bion cannot walk unaided, although it is not clear whether this is due to fear or physical impossibility. Bion cannot feed himself without aid, and he does not indicate hunger or thirst. Bion cannot dress or undress himself unaided. Bion does not match or classify objects and he does not demonstrate an understanding of sequencing.

The professional qualifications of Saroulta Dala, Bion's proposed special day class teacher, are a concern. Ms. Dala does not have a special education credential to teach either the blind or the deaf ([Cal.] Education Code [§] 44265.5), although her rapport with and affection for Bion are exemplary. Other credentialed teachers and therapists have made little progress with Bion....

In his school district placements, Bion has not benefitted educationally because he has not made satisfactory progress towards his IEP goals and objectives. The evidence does not establish that Penfield School is a placement which will enable Bion to make this necessary progress. Therefore, the Hearing Officer finds that Penfield School is not an appropriate placement for Bion because his placement there would not meet the minimum requirements described in *Rowley* with regard to educational benefit.

The hearing officer then proceeded to the question whether the School District should "be required to identify a nonpublic school program which can provide Bion with an appropriate program in a safe environment and to place Bion in that program[.]" He concluded that:

The evidence taken as a whole indicates that another approach must be taken towards educating Bion. The Hearing Offi-

cer finds that the school district must place Bion in an appropriate nonpublic school program for the 1990–1991 school year.... A one-year placement in another setting will also provide additional information as to whether Bion is capable of progress or has reached a plateau.

Both in the district court and on appeal, the School District and the Superintendent have argued that the hearing officer's decision is not supported by a preponderance of the evidence. They rely primarily on the testimony of Bion's teachers at the Boswell School, who stated, that Bion had made progress under their tutelage. We cannot ignore, however, the substantial contrary evidence upon which the hearing officer relied. Indeed, if the views of school personnel regarding an appropriate educational placement for a disabled child were conclusive, then administrative hearings conducted by an impartial decisionmaker would be unnecessary. But the IDEA provides for such a decisionmaker, and we accord his rulings some deference. *See Kerkam,* 862 F.2d at 887 ("Congress's emphasis on fair procedures at the administrative level would be frustrated if courts could freely disregard the results").

Having reviewed the record of the administrative proceedings, we are persuaded that the hearing officer's finding that Penfield was not an appropriate placement for Bion is entitled to substantial weight. *See Gregory K.,* 811 F.2d at 1311 (this court independently determines how much weight to give the administrative findings on issues that it reviews de novo). We reach this conclusion for several reasons. The hearing officer's decision evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented. He recognized that it is impossible to determine conclusively the extent to which Bion is educable, and he acknowledged that Bion's lack of progress toward his IEP goals is not the result of a lack of effort by public school personnel. As the hearing officer noted, moreover, a one-year placement in another school will reveal more fully whether Bion is capable of making progress toward his IEP goals. Indeed, the outlook for Bion's educational future is not entirely bleak. The 1990 CSB assessment, which contains the most recent information about Bion, concludes that he has the capacity to learn communication and self-help skills, and that he requires a program specifically designed for deaf/blind students, in which one-to-one teaching is emphasized. The Penfield School placement, however, would offer Bion only six and one-half hours per week of specialized, individual instruction.

Bion's IEPs for the years 1982–1989 and the 1990 CSB assessment demonstrate that, after seven years in the public school system, Bion has made little, if any, progress toward learning even the most basic skills. These facts cast serious doubt on the school officials' protestations that they have provided Bion with an appropriate education. *Cf. Roland M. v. Concord Sch. Comm.,* 910, F.2d 983, 991 (1st Cir.1990) ("Congress indubitably desired 'effective results' and 'demonstrable improvement' for the [IDEA's] beneficiaries[; h]ence, actual educational results are relevant to determining the efficacy of educators' policy choices") (footnote omitted) (quoting *Town of Burlington,* 736 F.2d at 788), *cert. denied,* 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991). We agree with the hearing officer that, despite their best efforts, the public schools have not provided Bion with a minimum level of educational benefit. *See Rowley,* 458 U.S. at 201, 102 S.Ct. at 3048; *Ash,* 980 F.2d at 587; *Gregory K.,* 811 F.2d at 1314. We find that the preponderance of the evidence supports the hearing officer's determination that the proposed Penfield School placement did not constitute a free appropriate public education as required by the IDEA. The additional evidence submitted to the district court, moreover, does not demonstrate any material difference between the instructional programs offered at Penfield and DeAnza. We find therefore that DeAnza does not constitute an appropriate educational placement for Bion. Accordingly, we reverse the district court's judgment on this issue.

**D. The Foundation for the Junior Blind Placement**

The Jacksons contend that the hearing officer's decision that the FJB was an appro-

priate educational placement for Bion is supported by a preponderance of the evidence. We agree.

In his August 1990 decision, the hearing officer observed that:

> [The FJB] may well be an appropriate placement; however, the school district will have to determine if the FJB program can address the goals and objectives outlined in Bion's IEP of May 31, 1989, has the appropriate credentialed staff, has facilities which meet state and federal requirements, and has a place for Bion.

Between September 4–18, 1990, Marty Babayco, the Director of Special Education for the School District, attempted to identify a state-certified nonpublic school for Bion. Babayco sought information regarding an appropriate placement from representatives of the FJB and the CSB, experts in the California State Department of Education/Department of Special Education, and officials of the Los Angeles Unified School District and the Santa Barbara County Superintendent of Schools. In a letter dated September 24, 1990, Babayco informed the hearing officer that all three state experts recommended the FJB as the only state-certified nonpublic school that could serve Bion's needs. The record contains no evidence that contradicts these expert opinions. Indeed, during the November 1990 telephone hearing, the hearing officer asked Babayco whether the FJB would be an appropriate placement for Bion if it had a vacancy. Babayco responded: "Well that was ... the only option that appeared in my search in terms of serving Bion's needs. It ... did meet the requirements that were ordered in the fair hearing." In his January 1991 supplemental order, the hearing officer found that "the FJB is an appropriate certified nonpublic school which can meet Bion's current needs in a safe environment."

The school officials challenge the hearing officer's conclusion on three grounds. First, they assert that the state experts who recommended the FJB to Babayco were not sufficiently familiar with Bion's needs to be able to render a valid opinion. We disagree. The School District itself sought advice from these persons precisely because it considered them experts in the field of special education. We are not persuaded by the School District's belated attempt to recast these opinions as unreliable.

Second, the school officials contend that the FJB is not an appropriate placement because it cannot provide some of the services specified in Bion's IEP. We reject this contention because it is not supported by the record. The school officials rely on deposition testimony of David Ekin, Director of Programs and Services at the FJB. Their argument, however, takes Ekin's testimony out of context. Read as a whole, Ekin's testimony demonstrates that the FJB can implement Bion's IEP. Moreover, during the administrative hearings, the School District and the Superintendent never contested the FJB's ability to serve Bion's needs; instead, they conceded that the FJB was the only nonpublic school in California that could do so. We will not allow them to reverse their position in these proceedings. *See Roland M.*, 910 F.2d at 997 ("[w]e refuse to reduce the proceedings before the state agency to a mere dress rehearsal by allowing appellants to transform the [IDEA's] judicial review mechanism into an unrestricted trial *de novo*").

Finally, the school officials challenge the legitimacy of the telephone hearings because the hearing officer did not administer oaths to the participants and did not formally admit in evidence the documents he reviewed. We conclude that these omissions do not affect the validity of the proceedings. At the first hearing in April 1990, the parties agreed that the hearings would not be conducted according to the rules of evidence applicable in court. The telephone hearings were recorded and transcribed, and these transcripts are part of the record before us. Similarly, the documents that were submitted to the hearing officer were included in the record of the administrative proceedings. More important, the school officials do not challenge the veracity of any of the information provided to the hearing officer during these telephone hearings. Accordingly, they have not demonstrated that they suffered any prejudice from the hearing officer's procedures.

**1478**

In sum, we conclude that the hearing officer's decision that the FJB is an appropriate placement for Bion is supported by a preponderance of the evidence. *See 20 U.S.C. § 1415(e)(2).* We therefore reverse the district court's judgment on this issue.

## IV. COSTS ASSOCIATED WITH DAY PROGRAM AT THE FJB

■ The Jacksons assert that the district court erred by overruling the hearing officer's order requiring the school officials to pay for Bion to reside with his grandparents in Los Angeles, while he attended the FJB's day program. We agree.

The IDEA defines the term "free appropriate public education" to include "special education" and "related services." 20 U.S.C.A. § 1401(a)(18) (West 1990). "Related services" in turn are defined as:

> [T]ransportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education[.]

20 U.S.C.A. § 1401(a)(17) (West Supp.1993). "The [IDEA] indirectly requires school districts to provide residential placements by defining elementary and secondary schools to include 'residential schools.'" *Clovis Unified Sch. Dist. v. California Office of Admin. Hearings,* 903 F.2d 635, 638 (9th Cir.1990) (quoting 20 U.S.C. §§ 1401(a)(9) and (10)). The applicable regulations provide that, "[i]f placement in a public or private residential program is necessary to provide special education and related services to a handicapped child, the program, including non-medical care and room and board, must be at no cost to the parents of the child." 34 C.F.R. § 300.302 (1992). The commentary to this regulation explains that "[t]his requirement applies to placements which are made by public agencies for educational purposes, and

includes placements in State-operated schools for the handicapped, such as a State school for the deaf or blind." *Id.* The federal regulations further require that, if a disabled child is placed in a private school or facility, the state shall insure that the child "[i]s provided special education and related services: (1) In conformance with an [IEP;] (2) At no cost to the parents; and (3) At a school or facility which meets the standards that apply to State and local educational agencies[.]" 34 C.F.R. § 300.401(a) (1992).

The hearing officer found that the FJB was the only appropriate educational placement for Bion, but that there were no vacancies in its residential program. The FJB is located approximately eighty-five miles from the Jacksons' home in Ojai; the hearing officer found that a daily commute to the facility was impossible in light of Bion's fragile health. Faced with this dilemma, the hearing officer concluded that:

> It would logically follow that where [Bion] has identified the *only* appropriate program available to him, *cannot* be admitted to the residential program because it is at capacity at the present time, and *can* enroll in an appropriate nonresident program at the same school, to deny him the reasonable rent compensation, food and caretaker fees which would enable him to attend school would deny him equal treatment from other handicapped children who are placed in the residential program.... Whether Bion spends the night at FJB (the residential program) or at his grandparents (the nonresidential program) should not affect his ability to receive the free appropriate education to which he is entitled.

Accordingly, the hearing officer ordered that Bion reside at his grandparents' home and attend the FJB's day class. The order further required the School District and the Superintendent to:

> pay school enrollment and tuition fees, transportation from Bion's Los Angeles residence to the [FJB] and return each day. [The school officials] shall also reimburse [Bion] for one round trip per school week between Ojai and Los Angeles, caretaker fees at $35.00 per school day, rent

compensation at $300.00 per month/or fraction thereof, and food costs for Bion at $5.00 per day. Reimbursement due Bion's grandparents for rent, and his caretaker's fees, and mileage allowance shall be paid once per month.

We conclude that, in the circumstances of this case, the hearing officer's order was supported factually by a preponderance of the evidence, and was permissible under the applicable regulations. There is no question concerning the dilemma that the hearing officer faced: for reasons already discussed, the only appropriate placement for Bion was at the FJB; the FJB was located far from Bion's home; and it had no presently available room in its residential program. Yet a placement in the FJB's day program was available for Bion, if he could be housed nearby. There is no doubt that the hearing officer's order solved the temporary practical problems that frustrated an appropriate placement for Bion. The only question is whether the compromise, born of highly unusual if not unique circumstances, was consistent with the applicable regulations.

The regulations authorize a placement in a private residential program, and they provide that when such a placement is necessary it shall include "non-medical care and room and board, ... at no cost to the parents of the child." 34 C.F.R. § 300.302 (1992). It is therefore clear that, if the FJB had had a residential placement available for Bion, the School District would have been liable for the costs of his room, board, and other supportive services. See 20 U.S.C.A. § 1401(a)(18) (West 1990).

When the hearing officer entered his order, Bion was on a waiting list for residential placement at the FJB, and the housing arrangement at Bion's grandparents' residence was clearly intended as an interim measure. The hearing officer's order may be viewed as temporarily extending the reach of the FJB's residential program. It permitted Bion to secure the only appropriate education available to him, at no cost to his parents.

The school officials argue that the regulations impose on the School District only a duty to provide Bion with special education and related services "[a]t a school or facility which meets the standards that apply to State and local educational agencies[.]" 34 C.F.R. § 300.401(a)(3) (1992). Nothing in the hearing officer's order, however, deviates from this regulation. Bion's education, and the related services defined in 20 U.S.C.A. § 1401(a)(17) (West Supp.1993), will be provided at the FJB, and there is no contention that the FJB fails to meet state standards. The provision of related services such as "developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, ... and [diagnostic] medical services)," id., will be the function of the FJB, not of Bion's grandparents. The fact that Bion is temporarily spending nights at his grandparents' house instead of at the FJB does not prevent the School District from meeting its responsibilities under the regulation. To deny reimbursement for Bion's residential and caretaking expenses at his grandparents, on the other hand, would preclude the School District from providing Bion an appropriate education by private placement "at no cost to the parents," as it is required to do. 34 C.F.R. § 300.302.

We agree, however, that the School District's financial obligation arises from its duty to provide placement in a private *residential program* when necessary. The School District should not be prejudiced by the special, temporary arrangement for accommodations ordered by the hearing officer. The School District's total liability to pay the costs of Bion's room and board, caretaker and transportation fees, along with the costs of education and related services provided by the FJB under its day program, may not exceed the cost that the state would have incurred had Bion been placed in the FJB's residential program. Subject to that limitation, we reverse the district court's ruling that the School District is not liable for Bion's room, board, transportation and caretaking fees incurred in connection with his temporary residence at his grandparents' house.

## V. RESIDENTIAL PLACEMENT AT THE FJB

The district court also concluded that the hearing officer's decision that Bion required

a residential placement was not supported by a preponderance of the evidence and was incorrect as a matter of law. As we already have explained, we agree with the hearing officer's conclusions that the FJB is the only appropriate educational placement available to Bion, and that a daily commute from Ojai to the FJB is incompatible with Bion's needs. Accordingly, we reverse the district court's decision and hold that Bion must be enrolled in the FJB's residential program as soon as a place becomes available. *See* 34 C.F.R. § 300.302.

Finally, the district court concluded that "[t]he hearing officer's decision that Bion Jackson required a full time school aide in order to benefit from his special education was not supported by a preponderance of the evidence and is incorrect as a matter of law." We reject this conclusion because the district court misstated the hearing officer's decision. The hearing officer found only that [i]n the event that an additional school aide is needed for Bion, that cost will be borne by [the school officials]." This finding was based on information presented during the December 1990 telephone hearing. At that hearing, Bion's advocate stated that David Ekin, the Director of the FJB, had indicated that, if Bion were enrolled at the FJB, the school might have to hire an additional aide to accommodate his needs. The FJB could not conclusively determine whether such an aide would be required, however, until Bion was admitted and evaluated by FJB personnel. Thus, the record before us contains insufficient evidence to allow a determination on this issue. If the FJB determines that an additional aide is necessary, however, we note that the statutory provisions and regulations would require the school officials to bear this expense. *See* 20 U.S.C. § 1401(a)(17) (related services that must be provided include "supportive services" necessary "to assist a child with a disability to benefit from special education"); 34 C.F.R. §§ 300.302 and 300.401(a)(2) (child's placement at a private residential school must be at "no cost" to the parents; services to be provided include "non-medical care").

## VI. ATTORNEY'S FEES

The Jacksons have requested an award of attorney's fees. Pursuant to 20 U.S.C.A. § 1415(e)(4)(B) (West Supp.1993), "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." Because the Jacksons have prevailed, we conclude that they are entitled to recover their reasonable attorney's fees for both the district court proceedings and this appeal. *See Ash,* 980 F.2d at 590 (awarding attorney's fees to prevailing parents) (citing *Barlow–Gresham Union High Sch. Dist. No. 2 v. Mitchell,* 940 F.2d 1280, 1286 (9th Cir.1991)). Accordingly, we remand the case to the district court for a determination of a reasonable fee award.

## VII. CONCLUSION

We reverse the district court's decision. We remand with instructions to reinstate the hearing officer's decision ordering Bion to be enrolled in the FJB's day program until a place becomes available in its residential program. Finally, we remand for a determination of a reasonable award of attorney's fees.

**REVERSED AND REMANDED.**