**Gene HUNGER, as next friend of Kristi Hunger, and Kristi Hunger, a minor, Plaintiffs–Appellants, Cross–Appellees,**

**v.**

**Robert LEININGER, in his official capacity as Superintendent of the Illinois State Board of Education, Defendant–Appellee,**

**and**

**John Murphy, in his official capacity as Superintendent of Geneva Community Unit School District 304, Defendant–Appellee, Cross–Appellant.**

Nos. 93–1777, 93–1881.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1993.

Decided Jan. 31, 1994.

**666**

Deborah W. Owens (argued), Susan E. Wayne, Hinsdale, IL, for plaintiffs-appellants.

Susan Frederick Rhodes, Asst. Atty. Gen., Patricia J. Whitten, Fay Hartog–Rapp (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendants-appellees.

Before POSNER, Chief Judge, and LAY * and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

The Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.*, gives disabled children an enforceable right to a "free appropriate public education which emphasizes special education and related services designed to meet their unique needs." § 1400(c). Kristi Hunger has a neurological disorder of unknown etiology and character that has retarded her development, enlarged her cranium, and caused her to have convulsions. When she was in the seventh grade the problem affected her inner ear, making it impossible for her to walk without assistance. Her parents withdrew her from school. For the next two years she received a meager amount of instruction (furnished by the school) at home. Her mental and psychological state worsened. She completed little of her assigned work, her comprehension and memory deteriorated, she gained a lot of unnecessary weight, and she became fearful and withdrawn. The school authorities thought she would be better off returning to school. They issued an Individual Educational Plan for her in June 1991 that so provided, adding that she should receive occupational and physical therapy but without indicating whether these services would be performed in her home or at school. Kristi's parents were skeptical about her ability to return to school, but on August 19, 1991, they agreed to a revised Individual Educational Plan under which their daughter would as under the June plan return to school but would do so in circumstances designed to ease her way back into the life of the school. The school would provide safety bars in the bathrooms to assist her, counseling by a social worker, and wheelchair assistance if she needed it, would make sure that someone would meet her when she arrived and that the school staff was cognizant of her special needs, and would permit her at first to attend school for only one period a day.

Kristi's reentry was a flop. She attended school on two separate days and almost everything that could go wrong did. Both days the bus that brought her to school arrived either before or after the people who were supposed to meet her were there to do so and as a result there was no one to help her when she arrived. On one of the days the bus broke down. It was a very hot day, the bus had no air-conditioning, and the bus's windows would not open. There were no bathroom safety bars in the school as promised; the classroom teacher would not let Kristi leave class early as she had been told she could; and the class was very large.

After the second day, Kristi refused to return to school, and her father told the

* Hon. Donald P. Lay of the Eighth Circuit.

school's social worker that he didn't have the physical strength to force Kristi into her wheelchair. Kristi never returned to school after that. Instead her father instituted a proceeding under the Act challenging the suitability of the Individual Educational Plan that the school district had devised for her, that is, the August plan. It is not argued that his having agreed to the plan bars his challenging it. The impartial hearing officer designated to consider the challenge pursuant to 20 U.S.C. § 1415(b)(2) and 34 C.F.R. § 300.507 upheld the plan but ordered the school district to provide to Kristi, in her home, counseling by a social worker and also, to the extent that space in the home permitted, occupational and physical therapy, in order to prepare Kristi better for another try at going back to school. Both sides appealed to a hearing officer appointed by the state board of education pursuant to 20 U.S.C. § 1415(c), the parents arguing that the plan was no good and that Kristi should be sent to a school with special facilities for handicapped children, the school district objecting to the order to provide transitional services in the home on the ground that it was inconsistent with the hearing officer's determination that the plan was valid. The appellate hearing officer affirmed, reminding the school district that the order it was complaining about was for the most part conditional upon there being space in Kristi's home for the transitional services. In compliance with the administrative order, the school district provided in-home counseling services for a time, but apparently it never provided occupational or physical therapy for Kristi. Whether this was because of lack of space in the home we do not know, as we know neither the size and layout of the home nor the precise nature of the occupational and physical therapy that had been ordered.

The next step in the procedural scheme of the Act is a suit in federal district court. 20 U.S.C. § 1415(e). Dissatisfied with the appellate hearing officer's determination that the August plan was valid, Kristi's father filed such a suit, asked for summary judgment, and also asked for a preliminary injunction against the defendants' terminating the transitional services that the hearing officers had ordered. The administrative order had not specified the duration of those services and the defendants had after nine months told Kristi's father that they were terminating "them"—actually "it," because only the counseling had been provided; occupational and physical therapy had never begun. The district judge not only refused the injunction (upon the recommendation of a magistrate judge to whom he had referred the request) and denied the plaintiff's motion for summary judgment, but also granted summary judgment for the defendants even though they hadn't asked for it. The judge did, however, award the plaintiffs several thousand dollars in what he called "interim" attorney's fees for the litigation at the administrative level. Kristi's father appeals from the denial of injunctive relief, from the grant of judgment on the merits to the school district, and from the judge's refusal to grant additional attorney's fees. The school district cross-appeals, contending that no attorney's fees should have been awarded.

The Act contains a "stay-put" provision whereby the initiation of proceedings to challenge an Individual Educational Plan bars the school district from altering the child's educational program. 20 U.S.C. § 1415(e)(3). The parents argue that the school district violated this provision when it terminated the transitional services that the hearing officers had ordered it to provide. This alleged violation is the basis of the request for a preliminary injunction. The request was properly denied. The plan that was frozen in place when the proceedings were initiated was the August 19, 1991, plan to return Kristi to school, because that plan had gone into effect (with her parents' agreement) before the proceedings to challenge it were initiated. The plan contained no provision for transitional services in the home, as it contemplated Kristi's immediate return to school. Those services were ordered later, when she refused to return.

It is true that in February 1992, after the in-home transitional services were ordered by the first hearing officer, the school district issued an amended Individual Educational Plan that confirmed their provision. This part of the amended plan may have been conditional on the outcome of the school dis-

trict's impending challenge to the order. Otherwise—if the school district had complied unconditionally with the part of the administrative order that it was challenging on appeal—its appeal would have been moot. If an order is not stayed, the party against whom it is directed *must* comply with it, pending his appellate challenge to it; perhaps that is the only significance of the amendment: as the statement of an interim duty. Against this it can be argued that the "stay-put" provision prevented the school district from complying with any order that altered Kristi's educational treatment until the proceedings had run their course, unless the plan that prescribed that treatment was altered; but the parents can consent to an alteration. At all events, after the order was affirmed by the appellate hearing officer, the school district dropped its challenge, so the condition (if there was one) dropped out and the amended plan became unconditional.

A departure from an amended as from an original plan could, no doubt, violate the stay-put provision; the defendants so concede. The plaintiffs failed, however, to argue to the magistrate judge to whom the district judge had referred the motion for a preliminary injunction that the defendants had departed from the August 1991 plan as amended in February 1992. Instead and confusingly they argued that the February 1992 plan was an amendment to the *June* 1991 plan—which the August plan, however, had superseded.

■ Even if, confusing as it was, this argument was close enough to an argument that the defendants were violating the August 1991 plan as amended to avoid a conclusion that the argument was waived, we note that the plaintiffs failed to submit timely objections to the magistrate judge's recommended decision. The statute allows ten days for such submissions. 28 U.S.C. § 636(b)(1). The plaintiffs took three weeks. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), holds that a circuit can adopt a rule that failure to file timely objections to a magistrate judge's recommended ruling forfeits appellate review of the district judge's decision to accept the recommendation. We adopted such a rule the following year, *Video Views, Inc. v.*

*Studio 21, Ltd.,* 797 F.2d 538 (7th Cir.1986), and have adhered to it. *Lockert v. Faulkner,* 843 F.2d 1015, 1017–18 (7th Cir.1988); *Egert v. Connecticut General Life Ins. Co.,* 900 F.2d 1032, 1039 (7th Cir.1990). These are not cases, however, in which the objector merely missed the ten-day deadline. We must decide whether missing the deadline for objections should be treated the same as not submitting objections at all (or not submitting pertinent objections, as in *Lockert*): that is, as a ground for refusing to consider the merits of the appeal from the district judge's ruling accepting the magistrate judge's recommendation. It would have to be treated the same way if the deadline were jurisdictional, but it is not. *Thomas v. Arn, supra,* 474 U.S. at 155, 106 S.Ct. at 475; *Ross v. United States,* 910 F.2d 1422, 1432 (7th Cir.1990). It is a deadline not for instituting or appealing a decision, but simply for lodging objections to a recommendation by a judicial adjunct. When a deadline is not jurisdictional, a court is not required to impose the fell sanction of dismissal for missing it. We decline to extend our rule barring appeal when objections to the magistrate judge's recommendation are not filed with the district judge to a case in which the filing was not egregiously late and caused not even the slightest prejudice to the appellees.

■ These procedural obstacles to one side, the plaintiffs were entitled to a preliminary injunction only if the August plan was validly amended, for it is only provisions of the amended plan that the defendants violated. It was not validly amended, because the plaintiffs refused to agree to the amendment—in fact steadfastly opposed it, because they did not want Kristi ordered back to school under any circumstances—and without their agreement the amendment was invalid. 20 U.S.C. § 1415(e)(3); 34 C.F.R. § 300.513 (Note). Perhaps this is why the plaintiffs equivocated over whether they were trying to freeze in place the June plan or the amended August plan. Neither the June nor the August plan required in-home transitional services—once the invalid amendment is stripped from the latter. The preliminary injunction was rightly refused.

Turning to the grant of summary judgment for the defendants, we understand the plaintiffs to be complaining not about the merits of the grant (which upheld the August plan) but about its propriety, the defendants not having moved for summary judgment. A district judge is authorized to grant summary judgment to a party that has not requested it, *Resolution Trust Corp. v. Ruggiero,* 994 F.2d 1221, 1226 (7th Cir.1993); he is not required to conduct a trial when there is no genuine issue of material fact, just because the parties lack the wit to notice the absence of any triable issues. But he must give notice of his intentions. *Id.; English v. Cowell,* 10 F.3d 434, 437 (7th Cir.1993). And the plaintiffs are correct that they did not by moving for summary judgment automatically surrender their right to a trial should the judge disagree that they were entitled to judgment as a matter of law. *Market Street Associates Limited Partnership v. Frey,* 941 F.2d 588, 590 (7th Cir.1991). Even if both parties move for summary judgment, this is not a waiver of either party's right to a trial should the judge deny that party's motion. *Id.*

But in the unusual circumstances of this case we think the judge was right to grant summary judgment to the defendants without their having moved for it *and* without any other notice to the plaintiffs. The suit in the district court was a proceeding for judicial review of administrative action—the action of the hearing officers in determining the validity of the Individual Educational Plan challenged by Kristi's parents. Judicial review of administrative action, even when the reviewing court is a single federal district judge rather than a panel of appellate judges, is ordinarily conducted on the basis of the record compiled in the administrative proceeding. The judge does not take new evidence; he decides whether the evidence in the administrative record supports the agency's findings. *Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1983) (per curiam); *Beerly v. Department of the Treasury,* 768 F.2d 942, 945 (7th Cir.1985). When a party moves for summary judgment in such a judicial-review proceeding, he does not implicitly reserve a right to a trial if the motion is denied; there is no right to a trial in a review proceeding, as contrasted with an original proceeding. The motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record. Cf. *Sabine River Authority v. U.S. Dept. of Interior,* 951 F.2d 669, 678–79 (5th Cir.1992). It informs the judge that he should resolve the case as a matter of law; that there are no triable issues of fact.

Judicial review under the Individuals with Disabilities Education Act is different. The district court "shall receive the records of the administrative proceedings, *shall hear additional evidence at the request of a party,* and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2) (emphasis added). The court thus is authorized to supplement the administrative record and base its decision on the composite administrative-judicial record. *Ojai Unified School District v. Jackson,* 4 F.3d 1467, 1472–73 (9th Cir. 1993). But a party that wants to avail itself of the opportunity to present evidence in the district court must, we hold, make clear its desire to do so. If neither party makes a request for leave to submit evidence, the court is entitled to assume that the parties want the case decided on the basis of the administrative record. When the plaintiffs in this case moved for summary judgment they gave no hint that they wanted to present evidence if the motion was denied. (Nor did they ask the magistrate judge, to whom their motion for a preliminary injunction had been referred, for an opportunity to present evidence to him in support of the motion.) The motion for summary judgment asked the court to decide "whether the administrative hearing officers below failed to apply the proper law, and failed to make findings and orders consistent with the greater weight of the evidence, thus invalidating the Defendant school district's educational plan and requiring a ruling in favor of parent's requested program." There is no hint that if the motion failed, the plaintiffs would want to introduce additional evidence. We can understand now why the defendants filed no motion for summary judgment: the plaintiffs'

motion had adequately put the issue for decision—an issue of law, the validity of the administrative decision—to the district judge.

In an ordinary civil case, a plaintiff need not "request" an opportunity to introduce evidence. The presentation of evidence is the norm, and the heading off of an evidentiary hearing by a motion for summary judgment is exceptional. So there is no presumption that by failing to request a trial if his motion for summary judgment fails the moving party has waived his right to a trial. It is different in judicial-review proceedings, even under the Individuals with Disabilities Education Act. Decision on the record compiled before the administrative agency is the norm in judicial review of administrative action, so a party that wants the judge to take evidence rather than decide the case on the record compiled before the hearing officers had better tell him. It is sandbagging to make the judge think that you want him to decide the case on the administrative record and then when he does so and rules against you ask for an opportunity for a second, an evidentiary, bite at the judicial apple.

The last issue concerns attorney's fees. The statute authorizes the district judge to award attorney's fees to "the prevailing party." 20 U.S.C. § 1415(e)(4)(B). The judge thought that the plaintiffs could be so classified because they had, after all, succeeded in obtaining an order for transitional services pending Kristi's return to school. The fact that all the relief they got came in the administrative rather than in the judicial proceeding is not a bar. *Brown v. Griggsville Community Unit School Dist. No. 4*, 12 F.3d 681, 683–84 (7th Cir. Dec. 20, 1993). But it is still necessary to consider whether they got enough relief to be classified as a "prevailing party." Mostly they lost. They wanted to knock out the Individual Educational Plan for Kristi; they failed. They wanted an injunction against the withdrawal of the transitional services; they failed. They got an order for those services but except for nine months of counseling by a social worker the services were never provided. So all they actually received was the smallest part of the in-home transitional services for nine months. And what is the value of those services? They had no intrinsic value; they were not rehabilitative; they were intended—these sessions with the school's social worker that are the only services Kristi received at home pursuant to the administrative order—merely to facilitate her reentry into school. The services were terminated in November 1992 without achieving that goal. It is now January 1994. She is still at home.

This discussion enables us to put the relief that Kristi obtained in the proper legal pigeonhole: interim relief for which attorney's fees may *not* be awarded. In the course of a proceeding that may result in the utter defeat of the plaintiff, he may nevertheless obtain some favorable rulings—such as a remand, a discovery order, an order *in limine* excluding certain evidence, or an order disqualifying the defendant's lawyer—that confer a benefit upon him until the rulings are ultimately vacated: tactical victories in what turns out to be a losing war. Such rulings do not create a right to attorney's fees. *Richardson v. Penfold*, 900 F.2d 116, 119 (7th Cir.1990). This is clearest in a case like *Richardson*, in which the favorable interim ruling is purely procedural (a remand in that case). But the principle can we think be extended to interim benefits, such as the in-home counseling services here, that the plaintiff retains even if in the end his suit is found to have no merit. *Christopher P. by Norma P. v. Marcus*, 915 F.2d 794, 805 (2d Cir.1990).

Two classes of case should be distinguished within the category of retained benefits that nevertheless do not entitle the plaintiff to an award of attorneys' fees. In one, the plaintiff has obtained benefits to which we now know he was never entitled, and as those benefits thus cannot be said to have resulted from a judgment or "comparable relief through a consent decree or settlement," *Farrar v. Hobby*, —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992), the plaintiff is not entitled to attorney's fees for obtaining them. That is not our case. Although the challenge to the August 1991 Individual Educational Plan failed, the order to provide the transitional services was not

premised on the invalidity of the plan (in fact the hearing officers upheld the plan). It was designed to improve a valid plan.

In the second class of case, the benefits are pursuant to a valid order but their value is wiped out by the ultimate outcome of the case. That is our case. The benefits of the counseling by the social worker were contingent on Kristi's complying with the August plan by returning to school. The counseling had no independent value, unlike the benefits provided in *Phelan v. Bell,* 8 F.3d 369, 372–74 (6th Cir.1993); *Krichinsky by Krichinsky v. Knox County Schools,* 963 F.2d 847, 850 (6th Cir.1992), and *Mitten v. Muscogee County School District,* 877 F.2d 932, 936 (11th Cir.1989), in all of which an award of attorney's fees was held to be proper. The provision in this case of services incidental to a goal never achieved was analogous to a reversal in favor of a plaintiff who goes on to lose his case on remand.

The district court was right to uphold the plan, but erred in awarding attorney's fees to the plaintiffs. The judgment is therefore

AFFIRMED IN PART AND REVERSED IN PART.