

John Russionello, U.S. Atty., Steven Shefler, San Francisco, Cal., for plaintiff.

Michael Tonsing, Oakland, Cal., for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**UNITED STATES of America, Plaintiff,**

**v.**

**GAVILAN JOINT COMMUNITY COLLEGE DISTRICT and Gavilan College, Defendants.**

**No. 85–8622 SC.**

United States District Court, N.D. California.

July 11, 1986.

CONTI, District Judge.

In 1970 Congress authorized the Veterans Administration (VA) to establish the Predischarge Education Program (PREP). Under this program, about 200 schools provided courses of study for active duty military personnel. In 1972 Congress authorized the Veterans Administration to establish appropriate rates for tuition and fees in the program. Gavilan College provided PREP courses from October 1972 to June 1976. By 1975 it offered courses aboard 80 to 150 ships of the United States Navy. The Veterans Administration approved the rates Gavilan charged servicemen for their PREP courses. The Veterans Administration reimbursed servicemen for these expenses. Gavilan subcontracted with ModuLearn, Inc., an educational consulting corporation, which provided much of the program services. Under their contract, ModuLearn received 50–85% of the PREP payments.

The PREP statute, 38 U.S.C. Section 1695 *et seq.*, provides that a school such as Gavilan may be reimbursed only its reasonable costs of offering PREP courses. In this action the United States maintains that Gavilan charged more than its reasonable costs. The United States sues to recover alleged overpayments of $898,689 plus interest.

The matter is presently before the court on defendants' motion for summary judgment. Summary judgment is proper only where there is no genuine issue of material fact or when, viewing the evidence in the

light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. *Bank of California, N.A. v. Opie,* 663 F.2d 977, 979 (9th Cir. 1981); *State ex rel. Edwards v. Heimann,* 633 F.2d 886, 888 (9th Cir.1980). Once a summary judgment motion has been made and properly supported, the adverse party may not rest on the mere allegations of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983); *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980).

For the reasons below, the court determines that the statute of limitations bars this action as a matter of law. Therefore the court grants summary judgment for defendants.

28 U.S.C. Section 2415(a) sets a limitation period of six years in an action of contract or quasi-contract brought by the United States. Section 2415(d) also sets a limitation period of six years in an action for recovery of overpayment on behalf of military personnel. The present action falls under either Section 2415(a) or Section 2415(d), and so the limitation period is six years. The cause of action accrued on the dates when the Veterans Administration made overpayments to Gavilan, between 1972 and 1976.

28 U.S.C. Section 2416 reads as follows:

For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which—

. . . . .

(c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances. . . .

Thus the limitations period begins only when the responsible official knew (or could have known) the material facts that gave rise to the action.

The United States contends that the statutory period began to run on July 20, 1979.

On that date the Veterans Administration issued its audit report on Gavilan's PREP program. If the limitations period began on that date, then the government has met the statute of limitations. The parties stipulated to exclude the period from July 19, 1985 to November 25, 1985 in order to conduct settlement negotiations. The United States filed suit on November 22, 1985.

Gavilan contends that the responsible officials knew (or could have known) of Gavilan's alleged surplus at an earlier date. Gavilan advances several pieces of evidence for its contention. The United States disputes the import of this evidence.

First, on March 14, 1975, the Veterans Administration's PREP Director wrote Gavilan that its charges were excessive. Defendants' Ex. B. Thus responsible officials knew of Gavilan's alleged surplus at this time, Gavilan argues. The United States counters, however, that this letter refers primarily to Galivan's failure to make refunds for students who dropped out. This letter did not address the underlying excess fees, the United States argues.

Second, in 1977 the General Accounting Office examined nine schools and two consulting firms which offered PREP programs. The GAO estimated VA payment, cost, and resulting surplus for each. The GAO estimated that Gavilan had received excess payments of $227,000 and that ModuLearn had received excess payments of $595,000 in its association with Gavilan. In a letter dated December 8, 1977 and addressed to the Administrator of the Veterans Administration, the GAO advised the VA to recover the surplus funds.

We believe that VA should recover surplus funds accumulated after October 24, 1972, by schools and consultants participating in PREP. . . . We believe, however, that there could be a final VA audit before seeking recovery action because in some cases, closeout costs, receivables, and payables had not been settled at the time we completed our fieldwork.

. . . . .

Significant amounts of surplus funds have been accumulated by PREP schools

and consultants because VA has not (1) issued regulations defining the types and amounts of PREP costs for which reimbursement could be received and (2) made audits of schools' and consultants' financial records to determine if it was reimbursing them only for reasonable costs.

Defendants' Ex. C, pp. 5, 7. Gavilan argues that responsible officials knew of Gavilan's alleged surplus at this time. The United States counters, however, that the GAO did not conduct a full audit. According to the United States, the GAO recognized that some schools might have other costs that would reduce the apparent surplus.

Third, in February 1978 Senator Proxmire questioned Veterans Administration officials about the surplus payments in a Congressional hearing. The Veterans Administration's general counsel stated that the Veterans Administration would attempt to recover the surplus. "We are proceeding to initiate collection action.... I suppose we will attempt to get a judgment, and collect it, or we will attempt to compromise it." Defendants' Ex. D, p. 13.

Fourth, on March 17, 1978, the VA Administrator wrote to Senator Ribicoff, Chairman of the Senate Subcommittee on Governmental Affairs. Defendants' Ex. E. The VA Administrator concurred in the recommendations of the GAO. He promised to conduct a Veterans Administration audit of the nine schools and two consultants. "[T]he VA will attempt to recover the excess profits and/or surplus funds from the schools, institutions and consultants." Gavilan argues that responsible officials knew of Gavilan's alleged surplus at this time. The United States counters that at this time responsible officials merely recognized the need for an investigation.

The GAO report of December 8, 1977 reached a firm conclusion that the Veterans Administration had overpaid Gavilan. The GAO did not consider that it had made the final determination of the amount of overpayment. However, "it is not necessary that relevant officials have all details of a claim before the statutory period begins to run; once the facts making up the 'very essence of the right of action' are reasonably knowable, the § 2416 bar is dropped. Cong.News at 2508." *United States v. Kass*, 740 F.2d 1493, 1497 (11th Cir.1984). *Accord, United States v. Beck*, 758 F.2d 1553 (11th Cir.1985). Once the GAO sent its report to the Veterans Administration, the VA knew the material facts that gave it a right of action. The comments of VA officials to Senator Proxmire and Senator Ribicoff confirm this. There is little explanation why the Veterans Administration delayed until 1979 to conduct its own audit, and there is no explanation why the United States delayed until 1985 to file suit.

The United States contends that officials did not know the material facts until the Veterans Administration completed its own audit. Some cost categories were not settled at the time the GAO investigated. Therefore the GAO report had suggested a VA audit to determine the precise amount of Gavilan's surplus. Nonetheless, the fact of overpayment was known in 1977. Once the fact of overpayment was reasonably knowable, the limitations period began to run even though the precise amount was not yet determined.

The United States cites *State of Washington, et al. v. United States*, 8 Cl.Ct. 693 (1985), an unpublished case involving parallel facts. That case found that the limitations period begins at the date of the audit report. Plaintiffs' Attachments, 92–112. The Court of Claims there did not face the well-documented argument Gavilan has presented here, and so *State of Washington* is not persuasive.

The court finds as a matter of law that the statute of limitations began to run on December 8, 1977. The statute of limitations is six years, and the United States did not enter its stipulation concerning the statute until July 19, 1985. Therefore this action is barred. The court need not address defendants' remaining arguments.

In accordance with the foregoing, it is hereby ordered that:

(1) defendants' motion for summary judgment is granted and this action is dismissed.