**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**GAVILAN JOINT COMMUNITY**
**COLLEGE DISTRICT, et al.,**
**Defendants–Appellants.**

No. 87–2126.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 18, 1988.

Decided June 23, 1988.
As Amended Sept. 2, 1988.

Michael J. Tonsing, Pierucci & Tonsing, Oakland, Cal., for defendants-appellants.

---

Michael E. Robinson, Dept. of Justice, Civil Div., Appellate Section, Washington, D.C., for plaintiff-appellee.

Before SCHROEDER, FLETCHER and BOOCHEVER, Circuit Judges.

SCHROEDER, Circuit Judge:

The United States brought suit against Gavilan Joint Community College District and Gavilan College ("Gavilan") to recover overpayments received by Gavilan under a Veterans Administration educational program. The district court granted summary judgment to Gavilan, finding that the United States' action was time-barred by the six-year statute of limitations. 662 F.Supp. 309. Gavilan appeals from the district court's denial of attorney's fees under the Equal Access to Justice Act. It also appeals from the denial of sanctions under Rule 11, Fed.R.Civ.P.

The district court found "that the United States had no reasonable basis in law and fact on which to challenge [Gavilan's] limitations defense," but nevertheless held that under the "totality of the circumstances" the United States' position was substantially justified because the underlying claim once had a reasonable chance for success. The district court misapplied the "totality of the circumstances" test in holding that the Government's pursuit of a time-barred claim was substantially justified. We therefore reverse and remand for imposition of attorney's fees.

## BACKGROUND

The facts are not disputed. From 1972 to 1976, Gavilan participated in the Predischarge Education Program, under which it provided active duty military personnel with high school completion programs and remedial courses of study. Under this program, Gavilan was entitled to receive reimbursement for its reasonable costs in providing tuition, fees, books, and supplies, or $175 per month for a full-time course, whichever was less. 38 U.S.C. § 1696(b).

In 1977, the General Accounting Office ("GAO") audited some of the participating schools, including Gavilan, and concluded that the schools had received surplus funds. On December 8, 1977, the GAO wrote to the Veterans Administration, recommending that the VA recover its surplus payments from the schools.

Under 28 U.S.C. § 2415(a), actions based in contract or quasi-contract brought by the United States have a six-year statute of limitations. Gavilan contended that the statute began to run when it ceased its participation in the program in June 1976, or alternatively, that the statute began to run when VA officials knew or should have known of the surplus payments. The GAO had advised the Veterans Administration to recover the surplus payments in December 1977; VA officials were questioned about the surplus payments in a Congressional hearing in February 1978; and the VA Administrator wrote to the Chair of the Senate Subcommittee on Governmental Affairs in March 1978, promising to audit the schools in the GAO survey, and to "attempt to recover the excess profits and/or surplus funds from the schools." Therefore, Gavilan argued that the statute began to run by early 1978 at the latest. The United States did not file suit to recover the overpayments until November 22, 1985.

The United States contended that the statute did not begin to run until the completion of its own audit on July 20, 1979. (The parties stipulated to exclude July 19, 1985, to November 25, 1985, from the limitations period in order to conduct settlement negotiations.) The district court granted summary judgment to Gavilan, finding that the statute of limitations began to run on December 8, 1977, and thus that the Government's claim was time-barred.

Gavilan then requested attorney's fees, contending that the United States' position was not substantially justified as defined by the Equal Access to Justice Act. Gavilan also requested Rule 11 sanctions. The district court found that "the United States

had no reasonable basis in law on which to challenge defendants' limitations defense," and that "[a]s to the Government's factual assertion against defendants' limitations defense, the court finds that the United States' position was unreasonable." Yet the court then held that considering the "totality of the circumstances," the Government's position was substantially justified because the underlying action was reasonable, and thus denied both motions. Gavilan timely appeals pursuant to 28 U.S. C. § 1291.

## DISCUSSION

### A. *Equal Access to Justice Act*

■ The Equal Access to Justice Act provides for the award of attorney's fees to parties prevailing against the Government in civil actions:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). There is no question that Gavilan has prevailed against the Government in this litigation. The argument on appeal is whether the United States' position was "substantially justified" so that an award of attorney's fees was not warranted.

In focusing upon the possible prima facie merit of the Government's claim, without regard to possible defenses, the district court was no doubt influenced by the inter-circuit debate over what courts should consider in assessing the "position" of the United States. After Congress enacted the Equal Access to Justice Act, the courts divided over the proper definition of the term "position" of the United States.

Some courts construed the language to mean the Government's litigation posture. *See, e.g., Spencer v. NLRB,* 712 F.2d 539, 556 (D.C.Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984); *Electronic Modules Corp. v. United States,* 702 F.2d 218, 219 (Fed.Cir.1983). Other courts construed the language to include the conduct of the Government giving rise to the litigation. *See, e.g., Natural Resources Defense Council v. EPA,* 703 F.2d 700, 708 (3rd Cir.1983); *Tyler Business Services v. NLRB,* 695 F.2d 73, 75–76 (4th Cir.1982). In examining this conflict, this circuit held that "the remedial purpose of the EAJA is best served by considering the totality of the circumstances prelitigation and during trial." *Rawlings v. Heckler,* 725 F.2d 1192, 1196 (9th Cir.1984).

Congress then discussed the meaning of the term "position" of the United States in its 1985 amendments to the Equal Access to Justice Act. The legislative history to the amendments states that:

> Part of the problem in implementing the Act has been that agencies and courts are misconstruing the Act. Some courts have construed the "position of the United States" which must be "substantially justified" in a narrow fashion which has helped the Federal Government escape liability for awards. H.R. 2378 clarifies both of these points. When the escape clause [permitting the United States to escape liability when its position was substantially justified] was originally written, it was understood that "position of the United States" was not limited to the government's litigation position but included the action—including agency action—which led to the litigation. However, courts have been divided on the meaning of "position of the United States." H.R. 2378 clarifies that the broader meaning applies.

H.R.Rep. No. 120, 99th Cong., 1st Sess. 8, *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 137 (footnotes omitted). Thus, Congress has clarified that it intended that courts examine both the underlying Government action *and* the Government's

litigation position, not solely the litigation position.

When the district court in this case held that the Government's position was substantially justified, it apparently focused solely on the underlying claim, to the exclusion of the litigation position and the Government's unexplained delay in bringing its claim. Nothing in the Act's language itself or the legislative history, however, implies that in evaluating whether the Government's position was substantially justified in a particular action, Congress intended the courts to ignore the obvious existence of complete defenses to a Government action. Rather, the legislative history to the original Act clearly indicated a presumption that fees would be awarded unless the Government showed the award would be unjust.

> [F]ees will be awarded unless the Government can show that its action was substantially justified or that special circumstances make an award unjust.... [T]he strong deterrents to contesting Government action require that the burden of proof rest with the Government.... Certain types of case dispositions may indicate that the Government action was not substantially justified. A court should look closely at cases, for example, where there has been a judgment on the pleadings or where there is a directed verdict or where a prior suit on the same claim had been dismissed. Such cases clearly raise the possibility that the Government was unreasonable in pursuing the litigation.

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10–11, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4984, 4989–90. There is no reason, consistent with the Act's purpose, or with the "totality of the circumstances" test, for holding that the Government's position was substantially justified when it proceeded to file an action that was clearly time-barred. The purpose of the EAJA, as well as the purpose of statutes of repose themselves, are better served by discouraging the pursuit of stale claims.

Similarly, no special circumstances exist that should relieve the Government from the consequences of pursuing a time-barred claim. This case does not involve "a novel but credible extension or interpretation of the law," *Hoang Ha v. Schweiker,* 707 F.2d 1104, 1106 (9th Cir.1983), an issue on which "reasonable minds could differ," *League of Women Voters v. FCC,* 798 F.2d 1255, 1260 (9th Cir.1986), or an "important and doubtful question," *Minor v. United States,* 797 F.2d 738, 739 (9th Cir.1986).

■ The limitations question in this case is not a close one. The Government argues that the statute of limitations should not have started to run until it completed its own audit in July 1979, because only then did it know the exact amount of its overpayments to Gavilan. The applicable statute of limitations for contract actions brought by the United States provides that such actions "shall be barred unless the complaint is filed within six years after the right of action accrues." 28 U.S.C. § 2415(a). It is well-settled that under federal law, a cause of action generally accrues when a plaintiff knows or has reason to know of the injury that is the basis of the action. *See, e.g., Compton v. Ide,* 732 F.2d 1429, 1432 (9th Cir.1984); *Cline v. Brusett,* 661 F.2d 108, 110 (9th Cir.1981). Likewise, section 2416 provides that in determining the limitations period under section 2415, the court shall exclude periods during which "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances." 28 U.S.C. § 2416(c). The legislative history expressly states that the principal application of this exclusion was intended for situations involving fraud. S.Rep. No. 1328, 89th Cong., 2d Sess., *reprinted in* 1966 U.S. Code Cong. & Admin.News 2502, 2507.

Uncertainty as to the exact amount of the Government's overpayments to Gavilan does not constitute lack of knowledge of a fact "material to the right of action." Parties are not entitled to delay instituting a claim until they know the exact dollar amount; the Government here essentially asserts that it may postpone litigation indefinitely through delay in conducting its

own audit. This is not a tenable position. The Eleventh Circuit stated the principle well when it said:

> Congress could not ... be completely forgiving of government delay and still be true to its motives in enacting a statute of limitations. Therefore, it is not necessary that relevant officials have all details of a claim before the statutory period begins to run; once the facts making up the "very essence of the right of action" are reasonably knowable, the § 2416 bar is dropped.

*United States v. Kass*, 740 F.2d 1493, 1497 (11th Cir.1984); *see also Compton*, 732 F.2d at 1433 (knowledge of all details unnecessary for section 1983 cause of action to accrue). Thus, what is important is when the Government first discovered that it had a claim against Gavilan.

In both the court below and on appeal, the Government relied upon an unpublished Claims Court decision, *Washington v. United States*, No. 9–85C (Cl.Ct. Jan. 29, 1986), for the proposition that the statute of limitations should not have started running until the date of the Veterans Administration's audit report. However, not even that case supports the Government. As noted by the district court, the Government "relied solely on the conclusion in [the Claims Court opinion] and ignored the reasons for that conclusion." In *Washington*, there were two audits, one by the GAO and one by the VA. Both were within six years of the suit and there was no evidence that the government knew of the overpayments on any earlier date. *Washington*, slip op. at 15. In the case now before us, the district court concluded that "[d]efendants supplied overwhelming evidence indicating that the Government knew or reasonably should have known of the alleged overpayments prior to the audit." The "totality of the circumstances" relating to the Government's position in this case thus includes not only the existence of the Government's claim upon which the district court focused, but also the Government's delay for more than six years in pursuing it. The Government's position was not reasonable.

The foregoing discussion assumes that attorney's fees would not be available under the EAJA if we are to agree with the district court that the Government's position was "reasonable." At present, however, the law is not that simple. In this circuit, an open issue remains as to the effect of the 1985 amendments to the Equal Access to Justice Act regarding the appropriate standard in determining "substantial justification." *Andrew v. Bowen*, 837 F.2d 875, 878–79 n. 2 (9th Cir.1988); *Oregon Environmental Council v. Kunzman*, 817 F.2d 484, 498 (9th Cir.1987). We have not decided "whether the Act requires 'mere reasonableness' or 'a slightly more stringent standard than one of reasonableness.'" *Andrew*, 837 F.2d at 879 n. 2. However, we need not reach this issue because we hold that the Government's position was not substantially justified under any standard. Therefore, Gavilan is entitled to attorney's fees under the Equal Access to Justice Act.

## B. *Rule 11*

Gavilan also contends that the district court erred in dismissing its request for sanctions under Fed.R.Civ.P. 11. Rule 11 requires an attorney to sign "[e]very pleading, motion, and other paper of a party represented by an attorney." Fed.R.Civ.P. 11. The attorney's signature attests "that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose." *Id.* The rule provides for "an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee," for violations of the rule's provisions. *Id.*

As we have previously noted, "Rule 11 sanctions shall be assessed if the paper filed in district court and signed by an attorney ... is frivolous, legally unreasonable, or without factual foundation, even

though the paper was not filed in subjective bad faith." *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986). Here, the Government's action against Gavilan was subject to a known statute of limitations defense, and the district court found that "the United States had no reasonable basis in law on which to challenge [this] defense."

■ The United States contends that the federal courts cannot impose Rule 11 sanctions upon the Government due to its sovereign immunity. Although we have not previously expressly ruled whether courts may impose Rule 11 sanctions upon the Government, we have ordered the Government, pursuant to a Rule 60 motion, to recompense plaintiffs for costs and attorney's fees due to the Government's unreasonable conduct. *Schanen v. United States Department of Justice,* 798 F.2d 348 (9th Cir.1986). We have also upheld monetary sanctions against the Government under Rule 37(b). *United States v. National Medical Enterprises, Inc.,* 792 F.2d 906 (9th Cir.1986); *United States v. Sumitomo Marine & Fire Insurance Co.,* 617 F.2d 1365 (9th Cir.1980).

The Government acknowledges that it must follow the Federal Rules of Civil Procedure when litigating civil matters in the federal courts. Its only rationale for excepting itself from Rule 11 is that the "appropriate sanction … may include an order to pay." Fed.R.Civ.P. 11. However, we have previously ordered the Government to pay costs and attorney's fees under Rules 37(b) and 60, and no independent justification exists for barring Rule 11 sanctions under sovereign immunity. The Government has not shown any reason why payments under Rule 11 should be treated differently.

■ There is, however, a remaining question as to the appropriate sanction. We have already concluded that Gavilan is entitled to attorney's fees under the Equal Access to Justice Act, and these fees encompass what is fair and reasonable in this case. Rule 11 authorizes the same result through the sanction mechanism. Imposition of additional sanctions under Rule 11

are unnecessary. Because of this consideration, we find it unnecessary to analyze the circumstances in which the filing of a lawsuit, subsequently determined to be barred by the statute of limitations, may subject a party to Rule 11 sanctions.

The order of the district court denying attorney's fees is REVERSED and the matter REMANDED for the imposition of appropriate costs and attorney's fees against the United States.