**Grant MILLER, By and Through his Guardian ad Litem, Larry MILLER Plaintiff,**

**v.**

**SAN MATEO–FOSTER CITY UNIFIED SCHOOL DISTRICT Defendants.**

**No. C 03–3383MHP.**

United States District Court, N.D. California.

May 24, 2004.

---

Tania Lyn Whiteleather, Law Offices of Tania L. Whiteleather, Lakewood, CA, Lawrence David Miller, Law Office of Lawrence D. Miller, Belmont, CA, for Plaintiff.

Diane E. Finkelstein, Shupe and Finkelstein, San Mateo, CA, for Defendants.

## MEMORANDUM & ORDER

### Re: Cross Motions for Summary Judgment

PATEL, Chief Judge.

Plaintiff Grant Miller ("Grant" or "plaintiff"), by and through his guardian ad litem, Larry Miller, brings this action against the San Mateo–Foster City Unified School District ("the District") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, seeking attorneys' fees and reversal of portions of a state Special Education Hearing Office ("SEHO") decision. Specifically, plaintiff contests the decision of the SEHO hearing officer ("HO") to deny private school tuition reimbursement for the period during which the District violated its Child Find obligations under the IDEA. 20 U.S.C. §§ 1412(a)(3) & (10)(A)(ii). Now before this court are the parties' cross motions for summary judgment. After having considered the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.

*BACKGROUND*

I. *Statutory Background*

Congress enacted the IDEA "to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs ...." 20 U.S.C. § 1400(c). If a State provides every qualified child with a free appropriate public

education ("FAPE") under federal statutory requirements, the IDEA provides that State with federal funds to help educate children with disabilities. In exchange for these federal funds, the State must comply with "Child Find," which requires the State to design a program to identify and provide services to children with special education needs. 20 U.S.C. § 1412(a)(3). This obligation extends to children enrolled in private schools. *Id.* § 1412(a)(10)(A)(ii).

California maintains a policy of complying with IDEA requirements. *See, e.g.,* Cal. Educ.Code §§ 56000, 56100(i), 56128. It implements the Child Find program by requiring local school districts to identify disabled students by "actively and systematically seeking out all individuals with exceptional needs." Cal. Educ.Code § 56300. This obligation includes children in both public and private schools. *See* Cal. Educ.Code §§ 56301, 56302. Individualized education plans ("IEPs") are required for disabled students. 20 U.S.C. § 1414(d); Cal. Educ.Code § 56344. *See also Hacienda La Puente Unified School Dist. v. Honig,* 976 F.2d 487, 491 (9th Cir.1992).

In addition to its substantive requirements, the IDEA provides procedural safeguards. Some violations of these procedural safeguards may prevent a child from receiving a FAPE. Among the most important procedural safeguards are those that protect parents' rights to be involved in the development of their child's IEP. *Amanda J. v. Clark County Sch. Dist.,* 267 F.3d 877, 882 (9th Cir.2001). In addition to the procedural right to participate in the development of an IEP, parents have the right to "present complaints with respect to any matter relating to the identification, evaluation, or educational place-

ment of the child, or the provision of [a FAPE] to such child." 20 U.S.C. § 1415(b)(1)(E). After making such a complaint, parents are entitled to "an impartial due process hearing ... conducted by the State educational agency or by the local educational agency or an intermediate educational unit, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(b)(2). If either party is dissatisfied with the state educational agency's review, that party may bring a civil action in state or federal court. 20 U.S.C. § 1415(e)(2). California has implemented the mandated procedural safeguards in California Education Code sections 56500 through 56507.

## II. Facts [1]

In 1997, Grant Miller, then eight years old, was attending second grade in the San Mateo–Foster City School District. In April 1997, based on Grant's lack of motivation, general level of academic achievement, difficulty sustaining attention, and behavioral problems, Grant's second grade teacher referred him for an assessment to determine whether Grant had any special education needs. On April 17, 1997, the District requested Grant's parents' permission to assess him for such needs, utilizing a standard form that, along with the assessment request, contained information regarding the parents' right to seek private assessment and to appeal any decision by the District in a due process hearing. Admin. Rec., Exh. 31, at 2 ("Parents Rights and Appeal Procedures"). Grant's parents agreed to have him assessed.

District personnel completed their assessment of Grant in May 1997. On May 27, 1997, the District convened an IEP meeting; Grant's father was in attendance.

---

1. Unless otherwise specified, the facts are taken from the parties' moving papers and the administrative record.

Based on results from the Wechsler Intelligence Scale for Children–III ("WISC–III"), the Wechsler Individual Achievement Test ("WIAT"), and a number of other tests, Grant was found not to have a learning disability. He was thus not eligible for special needs education within the District. Admin. Rec., Exh. E ("Pupil Placement Summary"). At the IEP meeting, Grant's parents were again informed about their options with respect to the District's assessment: They could seek an independent assessment and present any results to the IEP team, or they could request a mediation or due process hearing if they disagreed with the eligibility determination. Grant's parents did not pursue any of these options until April 2002.

Grant remained in District schools through his third grade year, although he struggled to complete both the second and third grades. When he finished third grade, Grant was meeting grade-level expectations in reading, but he was slightly below grade-level expectations in speaking/listening and writing. Concerned about the District's ability to meet Grant's academic and emotional needs, his parents decided to remove him from District placement. They enrolled Grant in Jewish Day School ("JDS"), a private school, for fourth grade.

During the 1998–1999 school year, at the recommendation of his fourth grade teacher at JDS, Grant was assessed by Andrea Shor of Peninsula Educational Services. Shor concluded that Grant suffered from dyslexia, slow processing speed, and other difficulties, and she recommended that Grant be evaluated for nervous tics and possible attention deficit disorder ("ADD"). *See* Admin. Rec., Exh. F, at 22. She also recommended three hours of educational therapy per week and placement at Charles Armstrong School ("CAS"), a first-through-eighth grade institution specializing in teaching children with learning disabilities. *Id.* at 23–24. Shor further recommended that Grant's parents request accommodations at school to address Grant's motivation, work completion issues, behavior problems, writing problems, and other concerns. *Id.* at 25. Shor did not mention special education funding under the IDEA to Grant's parents, nor did she discuss their procedural rights under that statute. Admin. Tr., at 100. The District was not advised of Shor's assessment, nor was returning Grant to District placement considered at that time. *Id.*

Grant was again assessed in November 1998, this time by Dr. Sheila Snyder, a private clinical psychologist retained by Grant's parents.[2] Snyder found that Grant exhibited the same weaknesses noted by the District in May 1997, but she concluded that Grant demonstrated a rise in I.Q. score of twelve points.[3] She also administered the Test of Variables of Attention ("TOVA") and found that Grant's scores and profile suggested possible ADD. Nevertheless, Snyder felt that distractability, not hyperactivity, was the main component of Grant's attention disorder. She determined that his profile also suggested possible Tourette's Disorder. She recommended that Grant undergo an EEG to determine the regions of his brain that were hyper- and under-aroused, and she suggested that a behavior intervention plan would be helpful. Like Shor, Snyder did not discuss IDEA special education funding with Grant's parents. The District likewise was not advised of Snyder's

2. Snyder did not testify at the March 2003 due process hearing, but her report demonstrates that she administered the WISC–III.

3. Grant's score on the WISC–III in May 1997 was 97. According to the assessment performed by Dr. Snyder, that score rose to 109 in November 1998.

assessment. Grant was then enrolled in CAS beginning with the 1999 summer session of his fourth grade year.

Grant remained enrolled at CAS from the summer session of 1999 through the 2002–2003 school year. Until April 2002, there was no significant contact between Grant's parents and the District. In early 2002, Grant's father, an attorney, attended a continuing legal education seminar regarding the rights of parents of children having special education needs. At the seminar, presenters discussed parents' procedural rights under the IDEA, which encouraged Grant's parents to pursue the matter with the District. In April 2002, Grant's parents initiated a private assessment of Grant by Family and Community Enrichment Services, Inc. ("FACES"). That assessment began on April 9, 2002. On April 10, 2002, Grant's father wrote to the District, informing it that Grant had been diagnosed with dyslexia and ADD. He requested further assessment by the District for special education eligibility. The District responded by generating a notification of referral and assessment plan for Grant on May 1, 2002. Grant's parents signed and returned the assessment plan on May 8, 2002, and the District began its assessment of Grant in June 2002. The District testing concluded in October 2002. Meanwhile, between April and June 2002, a FACES team-consisting of Dr. Jeffrey Bruno, Dr. Katherine Eng, and Amy Zerges-privately assessed Grant.

Around September 24, 2002, Grant's parents requested an IEP meeting on October 23, 2002, to discuss the assessment results. *See* Admin. Rec., Exh. 16. The District granted the request and convened the meeting on October 23, 2002. In attendance at the IEP meeting were Grant's parents, Grant's attorney, Zerges (from FACES), Jim Cox (a district general education teacher), and a school psychologist. The head counselor at CAS, who was knowledgeable about Grant's performance at that school, was also scheduled to attend but did not.

The IEP record states that the purpose of the meeting was to assess Grant's needs and to address a private school plan for Grant's eighth grade year (2002–2003), as well as plans for Grant's ninth grade year (2003–2004). The IEP record also reflects that Grant's parents intended to keep Grant at CAS through his eighth grade year, but that they were interested in possible placement at a District high school for the following year.

The entire IEP team agreed that Grant was eligible for special education under the Other Health Impaired ("OHI") category because of his ADD, although the FACES representative, Zerges, argued that Grant should be classified as having a "specific learning disability." The District IEP team members disagreed; they further determined that Grant's difficulties required the services of the resource specialist program and regular classroom modifications. Rather than offer an IEP for private school placement for 2002–2003, the District offered Grant a special education placement with the District for 2002–2003. The IEP plan produced at the October 23 meeting included a provision characterized as a private school plan, which offered services to Grant to the extent of his proportionate share of funding under the IDEA.[4] Grant's parents refused to accept the District's proposed IEP and instead requested reimbursement for tuition costs for the previous four years of private school placement. They also requested funding for the remainder of the year at CAS. The District declined both requests.

4. The parties do not contest the HO's decision that the October 23, 2002, IEP was inadequate to provide Grant with a FAPE.

## III. Procedural History

### A. Due Process Hearing

Grant requested a due process hearing on November 27, 2002. Grant's request challenged the results of the October 23, 2002, IEP meeting; sought reimbursement and prospective private school placement for Grant's private schooling through the end of the 2002–2003 school year; alleged violations of Grant's civil rights and rights under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and demanded attorneys' fees. Michael Geary, Hearing Officer for the California Special Education Hearing Office, presided over the hearing on March 4, 5, and 6, 2003. The HO heard testimony from thirteen witnesses and considered extensive documentary evidence. On April 18, 2003, the HO issued a 22-page written decision ("the decision").

Before commencing the hearing on the merits, the HO considered a motion to dismiss certain claims filed by the District. In the motion, the District sought: 1) dismissal of Grant's claims, prior to April 2002, that the District had violated Child Find because the District claimed it had no continuing obligation to seek out and to assess Grant after his withdrawal from the public school system; 2) dismissal of Grant's claims that he was denied a free appropriate public education ("FAPE") for the current school year (2002–2003) because he was not entitled to a FAPE as a private school student that had not sought a public school placement for that year; 3) dismissal of Grant's civil rights claims and his claims under section 504; and 4) dismissal of Grant's claims prior to November 27, 1999, as barred by the three-year statute of limitations set forth in California Education Code section 56505(j). The HO found significant issues of fact regarding the first two categories of claims and denied the District's motion to dismiss in

part. But the HO dismissed the plaintiff's civil rights claims and pre-November 27, 1999, claims, finding that the Hearing Office lacked jurisdiction to hear civil rights and section 504 claims and concluding that plaintiff's claims prior to November 27, 1999, were barred by the applicable three-year statute of limitations. Decision at pp. 3–4. Thus, the HO's determinations regarding the District's Child Find violations and its alleged failure to properly assess Grant and provide him with a FAPE were limited to causes of action accruing after November 27, 1999.

With regard to the remaining claims, the HO ruled in the District's favor in part and in Grant's favor in part. Grant prevailed on the following issues: 1) that the District had failed to fulfill its Child Find obligations between November 27, 1999, and October 23, 2002; 2) that the District failed to provide Grant with a free appropriate public education ("FAPE") for the 2002–2003 school year; and 3) that Grant was entitled to reimbursement for enrollment at CAS for the 2002–2003 school year for the period between October 24, 2002, the day after the due process hearing decision, and prospective placement at that school for the remainder of that academic year. See Decision at pp. 11, 20, 21. The District received the following rulings in its favor: 1) that Grant was not entitled to compensation in the form of private school tuition reimbursement for the District's Child Find violations between November 27, 1999, and October 23, 2002, because Grant's parents did not suffer any compensable loss related to those violations; 2) that the District assessed Grant in all areas related to his suspected disability prior to the IEP meeting on October 23, 2002; 3) that the District did not err in failing to find Grant eligible for special education on the basis of a specific learning disability;[5] and 4) that, in spite of the District's failure

---

5. As stated previously, because of his ADD, Grant was found eligible for special education

to offer a FAPE on October 23, 2002, Grant was not entitled to compensatory education beyond the reimbursement for and prospective placement at CAS for the 2002–2003 school year starting on October 24, 2002. *See* Decision at pp. 12, 13, 15, 21.

### B. *Litigation in this Court*

On July 21, 2003, Grant filed a complaint against the District in this court, seeking review of the HO's decision pursuant to 20 U.S.C. § 1415(i)(2). Specifically, Grant argues that the HO erred in his application of the three-year statute of limitations and that the HO incorrectly found Grant not to be entitled to reimbursement of costs and tuition for his private school placements at JDS and CAS since his fourth grade year. Grant also seeks reimbursement for private school placement for the District's alleged failure to correctly assess Grant as having special education needs in his second grade year (1996–1997), a claim deemed to be time-barred by the HO. Finally, Grant also seeks reasonable attorneys' fees and costs, both in the original administrative action and in the instant action. The District has not contested any of the HO's findings against it.

### LEGAL STANDARDS

### I. *Summary Judgment*

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. *Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co.,* 26 F.3d 957, 959–60 (9th Cir.1994). Nor is it sufficient for the opposing party simply to raise issues as to the credibility of the moving party's evidence. *National Union Fire Ins. Co. v. Argonaut Ins. Co.,* 701 F.2d 95, 97 (9th Cir.1983). If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is 'entitled to judgment as a matter of law.'" *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c)).

### II. *Judicial Review of IDEA Claims*

■ The IDEA provides that a party aggrieved by the findings and decision

---

by the District under the Other Health Impairment ("OHI") category rather than qualification on the basis of a "specific learning disability." *See* 20 U.S.C. § 1401(26); Cal. Educ.Code §§ 56337, 56026(b) (setting forth the four eligibility criteria for a "specific

learning disability"). Grant's parents contested the District's finding that Grant did not have a "specific learning disability" at the SEHO hearing, but did not contest this matter before this court.

made in a state administrative due process hearing has the right to bring an original civil action in a state court of competent jurisdiction or in federal district court in order to secure review of the disputed findings and decision. *See* 20 U.S.C. § 1415(i)(2). The party challenging the decision bears the burden of persuasion on its claim. *Clyde K. v. Puyallup Sch. Dist., No. 3,* 35 F.3d 1396, 1399 (9th Cir.1994). The statute provides "the court shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* at § 1415(i)(2)(B).

▮ Judicial review of state administrative proceedings under the IDEA is less deferential than the review of other agency actions. *Ojai Unified School District v. Jackson,* 4 F.3d 1467, 1471 (9th Cir.1993). However, "because Congress intended states to have the primary responsibility for formulating each individual child's education, [courts] must defer to their 'specialized knowledge and experience' by giving 'due weight' to the decisions of the states' administrative bodies." *Amanda J. ex rel. Annette J. v. Clark County Sch. Dist.,* 267 F.3d 877, 888 (9th Cir.2001) (quoting in part *Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester County v. Rowley,* 458 U.S. 176, 206–08, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). This review requires the district court to carefully consider the administrative agency's findings. *Susan N. v. Wilson Sch. Dist.,* 70 F.3d 751, 758 (3rd Cir.1995). "The amount of deference accorded the hearing officer's findings increases where they are thorough and careful." *Capistrano Unified Sch. Dist. v. Wartenberg,* 59 F.3d 884, 891 (9th Cir.1995). After such consideration, "the court is free to accept or reject the findings in part or in whole." *Susan N.,* 70 F.3d at 758. When the court has before it all the evidence regarding the disputed issues, it may make a final judgment in what "is not a true summary judgment procedure [but] a bench trial based on a stipulated record." *Ojai,* 4 F.3d at 1472.[6]

### C. *Relief Under the IDEA*

The IDEA requires the District to provide Grant with a "free appropriate public education." 20 U.S.C. § 1412(1). The education to which access is provided must be "reasonably calculated to enable the child to receive educational benefits." *Rowley,* 458 U.S. at 207, 102 S.Ct. 3034. For violations of the IDEA, a district court has the power to "grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(e)(2). "Equitable considerations are relevant in fashioning relief" under the IDEA. *Sch. Comm. of Burlington v. Dep't of Educ.,* 471 U.S. 359, 374, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). By nature, equitable relief is a fact-specific inquiry in which the Ninth Circuit had held that "the conduct of both parties must be reviewed to

---

**6.** Other circuits have interpreted the standard in various ways. *See, e.g., Fort Zumwalt Sch. Dist. v. Clynes,* 119 F.3d 607, 610 (8th Cir. 1997) (holding that the weight due is less than that under the "substantial evidence" test, but court should consider the state hearing panel's expertise and opportunity to observe demeanor evidence); *Hartmann v. Loudoun County Bd. of Educ.,* 118 F.3d 996, 1000–01 (4th Cir.1997) ("Administrative findings in an IDEA case 'are entitled to be considered prima facie correct,' and 'the district court, if it is not going to follow them, is required to explain why it does not.' "); *Roland M. v. Concord Sch. Comm.,* 910 F.2d 983, 989–90 (1st Cir.1990) ("Hence, the court must render ... a 'bounded, independent decision[ ]— bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court.' "), *cert. denied,* 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991).

determine whether relief is appropriate." *Parents of Student W. v. Puyallup Sch. Dist., No. 3,* 31 F.3d 1489, 1496 (9th Cir. 1994) (internal citations omitted).

## DISCUSSION [7]

### I. *Statute of Limitations*

■ A threshold question in this action is whether the HO properly applied California's three-year statute of limitations. The HO determined that Grant's claims prior to November 27, 1999, were time-barred. As a result, the HO did not review the substance of the Millers' claim that the District's allegedly incorrect initial assessment of Grant's eligibility for special education services in 1997 gave rise to a claim for compensation.

As stated above, California implements IDEA through its special education programs laws. Cal. Educ.Code §§ 56000 *et seq.* Under California law, section 56505(j) establishes a three-year statute of limita-

tions for requesting a due process hearing. Under this section, any request for a due process hearing must be filed "within three years from the date the party initiating the request *knew or had reason to know of the facts underlying the basis of the request.*" *Id.*[8] (emphasis added). Section 56505(j)'s "knowledge of facts" requirement not does not demand that the plaintiff know the specific legal theory or even specific facts of the relevant claim; rather, the plaintiff must have known or reasonably should have known the facts underlying the supposed learning disability and their IDEA rights. *See, e.g., Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1111, 245 Cal.Rptr. 658, 751 P.2d 923 (1988) ("Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, [he] must decide whether to file suit or sit on [his] rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; [he] cannot wait for the facts to find

7. When reviewing an administrative hearing under the IDEA, courts may consider "additional" evidence, 20 U.S.C. § 1415(i)(B), but must be careful that such additional evidence does not change the character of the hearing from one of review to a trial *de novo. Ojai,* 4 F.3d at 1473 (adopting the First Circuit's standard for admission of additional evidence in IDEA cases). A non-moving party may yet defeat summary judgment by raising an issue of material fact with additional evidence. With his motion for summary judgment, plaintiff has submitted declarations stating additional facts. the District argues that this additional evidence should not be considered because the parties had a full opportunity to present all relevant evidence at the March 2003 hearing before the HO. The court has reviewed the declarations submitted and finds that the information therein is either 1) already reflected in the administrative record or 2) would only be necessary to make a determination with regard to the pre-November 27, 1999, claims found barred by the three-year statute of limitations by the HO. As set forth below, the court, based on the undisputed material facts on record, affirms the HO's decision with regard to the claims barred by the statute of limitations. Therefore, the new

evidence does not present any issue of material fact. The court is satisfied that none of the proffered evidence affects the appropriateness of summary judgment or impermissibly converts the court's review of the SELPA findings and decision into a trial *de novo.*

8. California Education Code section 56505(j) codifies the holding in *Alexopulos v. San Francisco Unified School District,* 817 F.2d 551, 554 (9th Cir.1987) ("Under federal law, a cause of action accrues, and the statute of limitations begins to run, when a plaintiff knows or has reason to know of the injury which is the basis of his action."). Section 56505(j) is in accord with federal law that the plaintiff's awareness of the underlying facts starts the statute of limitations running. "It is well-settled that under federal law, a cause of action generally accrues when a plaintiff knows or has reason to know of the injury that is the basis of the action." *United States v. Gavilan Joint Community College Dist.,* 849 F.2d 1246, 1249 (9th Cir.1988). Thus, "the focus of the question of accrual is ... on when the Plaintiffs knew or had reason to know of the injury giving rise to their cause of action." *Dreher v. Amphitheater Unified Sch. Dist.,* 22 F.3d 228, 233 (9th Cir.1994).

[him].”). Grant's parents knew such facts here. When Grant's parents became aware that he might have a learning disability but that the District assessed him otherwise, they knew or should have known the facts that would have given them the required "suspicion of wrongdoing."

The IDEA does not contain any provision requiring educational authorities or school districts to apprise parents of what types of disabilities trigger the District's requirement to provide a FAPE. The evidence presented at the SEHO hearing demonstrates that Grant's parents were aware of Grant's procedural rights under IDEA, including the right to have Grant reassessed, as of the time the District first contacted them requesting to assess Grant in his second grade year. The assessment form his parents received included information about the right to seek private assessment for the child, to institute mediation, or to seek a due process hearing upon dissatisfaction with the results of the District's special education assessment or IEP. See Admin. Rec., Exh. 31, at 2.[9] The declarations of Mr. and Mrs. Miller submitted with Grant's motion for summary judgment affirm that the Millers were told about their due process rights. Plf.'s Mot. Summ. J., Dec. of Patricia Miller ¶ 5; id., Dec. of Lawrence Miller ¶ 6. Although they may have disagreed with the District's decision, Grant's parents failed to exercise those rights during the three years following the initial determination that Grant did not exhibit a learning disability.

Further, even assuming that Grant's parents relied upon the District's determination that Grant did not have a learning disability, the subsequent private assessment of Grant by Andrea Shor at the beginning of the 1998–1999 school year confirms that Grant knew or should have known the relevant facts. As the administrative transcript notes:

*Ms. Whiteleather:* Did you have an understanding or any knowledge at that time that the information you'd received from the School District that Grant didn't have—at the May 97 meeting Grant didn't qualify for Special Ed. Did you have any information to indicate that was wrong? And this is at the time of Andrea Shor's report.

*Mr. Miller:* I—I think that the best way I can answer that is to say that with Andrea Shor's work I first realized that the School District was in their evaluation completely wrong in the sense they said he was fine.

*Ms. Whiteleather:* Did you have any information to indicate that in fact he had a learning disability?

*Mr. Miller:* I had an indication that he had dyslexia, I don't know if that's a learning disability that we're discussing, but from Andrea Shor's evaluation I knew that he had dyslexia.

Admin. Tr., at 100–01. Thus, at least by the time of Shor's assessment, Grant's parents knew the underlying facts but did not act until 2002. They initiated no contact with the District, and they made no effort to preserve Grant's due process rights under IDEA.

The record supports the HO's determination that Grant had sufficient knowledge of the relevant facts. Thus, the HO correctly determined that Grants related claims accrued no later than November 1998.[10] The statute of limitations for re-

---

9. Whether the Millers recall subsequent notification regarding their due process rights is immaterial because the undisputed evidence presented at the SEHO hearing demonstrates that the Millers received at least one notifica-

tion of those rights with the Notification of Assessment on April 17, 1997.

10. Dr. Snyder was the first person to diagnose Grant as potentially having ADD/ADHD,

questing a due process hearing with regard to the District's initial assessment of Grant began to run at that time, and any of Grant's claims not within the three-year window was correctly deemed time-barred.

## II. *Reimbursement for Private Placement*

In 1997, Congress amended the IDEA to limit the circumstances in which parents who have unilaterally placed their child in a private school can seek reimbursement for that placement. *Greenland Sch. Dist. v. Amy N.*, 358 F.3d 150, 157 (1st Cir. 2004). Because Grant was enrolled at CAS, a private school, when he filed his due process hearing request, his rights under IDEA are governed by 20 U.S.C. section 1412(a)(10). *See, e.g., id.* As amended, section 1412(a)(10)(c)(i) provides that the IDEA does not "require a local education agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility." *Id.* To determine if Grant is entitled to compensation, the court must address the District's Child Find efforts and the availability of a FAPE to Grant.

The HO found, and the parties do not dispute, that the District violated its Child Find duty to Grant between November 27, 1999, and the date the District offered Grant an IEP on October 23, 2002. The HO found, however, that in spite of the Child Find violation, the Millers were not entitled to reimbursement of private school

tuition between those dates. Grant challenges this ruling, arguing the District's Child Find violations deprived him of a FAPE during that time for which he is entitled to equitable reimbursement.

■ In the Ninth Circuit, parents have an equitable right to reimbursement for the cost of compensatory education where a school district has failed to provide a FAPE. *W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1485 (9th Cir.1992). However, procedural violations under the IDEA do not necessarily result in the denial of a FAPE unless the violation results in the loss of an educational opportunity or seriously infringes upon the parent's opportunity to participate in the IEP process. *Id.* at 1484. And even if there is a denial of a FAPE, the remedy remains an equitable one. *Id.*

The HO assessed the conduct of both parties when determining the appropriateness of awarding compensatory education as equitable relief for the District's Child Find violation between November 27, 1999, and October 23, 2002, the date of the IEP meeting.[11] *See, e.g., Parents of Student W.*, 31 F.3d at 1496. The HO concluded that the Millers were not interested in District placement during that time; instead, Grant's parents intended to keep Grant in private school because they thought his needs were better served at CAS. According to the HO, because the Millers had no interest in public school placement, Grant suffered no compensable loss.

---

but the specific type of learning disability diagnosed is not necessarily relevant. Once Grant's parents were aware that Grant may have had a learning disability, they knew of the facts underlying the basis for taking further action with the District to preserve their procedural rights.

11. The HO found that Grant was entitled to reimbursement for tuition and prospective placement at CAS between October 24, 2002, and the end of the 2002–2003 school year because the District failed to offer Grant a FAPE at the October 23, 2002, IEP meeting. This decision is not challenged here.

■ Before this court, Grant's parents argue that they only kept him at CAS because they were unaware that Grant could receive anything other than regular education from the District. Dissatisfied with Grant's previous experiences with the District's regular education program, the Millers contend that they may have explored placement at the District had they known that special education was an option for Grant. In their declarations, the Millers state that, had the District made special education available, they may have preferred a District placement to private school placement. P. Miller Dec. ¶ 16; L. Miller Dec. ¶ 18.

The court has considered both the administrative record and the additional evidence presented by the Millers. 20 U.S.C. § 1415(i)(2). After considering the HO's findings, the court finds the HO's decision is sufficiently supported by the record and concludes that Grant, as the challenging party, has not met his burden by a preponderance of the evidence. *Clyde K.*, 35 F.3d at 1399. Shor's testimony, cited by the HO as evidence that the Millers did not intend to return Grant to the District, confirms that the Millers did not intend to place Grant in public school when she assessed Grant in his fourth grade year. The record also includes several assertions by Mr. and Mrs. Miller that they were dissatisfied with the District's handling of their son's problems and that they did not intend to remove Grant from JDS or CAS. Furthermore, the Millers failed to contact the District about Grant until after they learned that they might have a right to seek reimbursement. Finally, in the declarations submitted with their summary judgment motion, the Millers admit that they had no intention of moving Grant from private school placement at the time they contacted the District to have their child reassessed for special education needs. P. Miller Dec. ¶ 13; L. Miller Dec. ¶ 13. Thus, the court concludes that the HO's determination that Grant suffered no compensable loss between November 27, 1999, and October 23, 2002, was correct. Accordingly, the court accepts that conclusion and grants the defendant's summary judgment motion on this question.

### III. *Attorneys' Fees*

■ In its motion for summary judgment, the District argues that plaintiffs cannot seek attorneys' fees because they have not requested them. To the contrary, Grant's complaint sets forth a claim for attorneys' fees pursuant to the IDEA, which provides: "In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). The statute authorizes state and district courts, not a hearing officer engaged in a due process hearing, to award attorneys' fees. *Id.* Therefore, the request for attorneys' fees is appropriately made for the first time in the instant district court action.

■ The Ninth Circuit has construed the IDEA to justify awarding attorneys' fees to parents who prevailed at an administrative hearing. *See, e.g., McSomebodies (No. 1) v. Burlingame Elementary Sch. Dist.*, 897 F.2d 974, 975 (9th Cir.1989). "When a parent obtains affirmative relief in a proceeding brought under the IDEA, then the parent is 'the prevailing party.'" *Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1026 (9th Cir.2000); 20 U.S.C. § 1415(i)(3)(B). The California Education Code simplifies the inquiry into whether a party has prevailed by requiring the HO in an administrative due process hearing to designate the prevailing party for each issue on which a decision was rendered.[12]

12. As noted below, however, the court must look at factors including the extent to which

Cal. Educ.Code § 56507(d). Once the plaintiff has been deemed a prevailing party, a district court's discretion to entirely deny a request for attorneys' fees is narrow. *Abu–Sahyun v. Palo Alto Unified Sch. Dist.*, 843 F.2d 1250, 1252 (9th Cir. 1988). Grant was the prevailing party on several of the issues at the administrative hearing, and thus the court may award attorneys' fees under section 1415(e)(4)(B).

Once the court determines that an applicant is a prevailing party, it must next determine what fees are reasonable. Reasonable attorneys' fees are determined by first calculating the "lodestar." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir.1987). The lodestar is found "by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210; *accord, Keith v. Volpe*, 833 F.2d 850, 859 (9th Cir.1987). In determining the amount of reasonable attorneys' fees, courts must also consider other factors. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (1975) (listing twelve factors).

■ When calculating the lodestar, the court must determine a reasonable number of hours for each attorney. *Chalmers*, 796 F.2d at 1210. To that end, the applicant must justify her claim by submitting detailed time records. The court may adjust these hours down if it believes the documentation to be inadequate, if the hours were duplicative, or if the hours were either excessive or unnecessary. *Id.* "The most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). Thus, to determine the reasonable number of hours, a court

must also inquire into whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Accordingly, the court must consider the extent of Grant's success when calculating a reasonable award of attorneys' fees. *See id.* at 440, 103 S.Ct. 1933 ("[W]here the plaintiff achieved only limited success, the district court should award only the amount of fees that is reasonable in relation to the results obtained."). In the due process hearing and the present action, Grant sought reimbursement for private school placement for the period from the 1998–1999 school year through the end of the 2002–2003 school year. According to the due process hearing and this court's analysis, Grant's private education costs were reimbursable *only* for the portion of the 2002–2003 school year between October 24, 2002, and the end of the academic year at CAS. Any award of attorneys' fees must take this degree of success into account.

■ The second lodestar factor is a reasonable hourly rate. What constitutes a reasonable rate in IDEA cases is set forth in 20 U.S.C. section 1415(i)(3)(C), which provides that "fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." *Id.* Accordingly, the court must look to the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience and reputation; it may not refer to the rates actually charged to the prevailing party. *Chalmers*, 796

the party prevailed in making its final determination regarding what constitutes a reason-

able attorneys' fee award.

 

F.2d at 1210–11. It is the fee applicant's burden to produce evidence, other than the declarations of interested counsel, that "the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan*, 815 F.2d at 1263; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Whiteleather provided only her own declaration in support of her claim for her hourly rate of $300 through the end of the due process hearing and $325 since that date. Where, as here, the sole evidence consists of the declaration of interested counsel, the applicant's burden is not satisfied.[13] Before establishing an appropriate rate of compensation, the court must have access to additional evidence of similar rates. 20 U.S.C. § 1415(i)(3)(C).

Thus, unless and until the plaintiffs submit a separate motion for attorneys' fees, the court will not set an attorneys' fees total. Should plaintiffs opt to file such a motion, they are required to submit additional and necessary evidence regarding 1) the specific dates of Grant's enrollment at CAS during the 2002–2003 school year and 2) reasonable rates "prevailing in the community" for "the kind and quality of services" provided. No other documentation is required.

### CONCLUSION

The court hereby DENIES the plaintiff's motion for summary judgment and GRANTS IN PART defendant's motion for summary judgment. The plaintiff may make a separate motion for attorneys' fees in accordance with section III above.

IT IS SO ORDERED.

---

**13.** In *Jordan*, the Ninth Circuit declined to consider the sufficiency of the evidence required to support a claimed fee. 815 F.2d at 1263 n. 9. Nevertheless, it is clear that Ms. Whiteleather's declaration discussing her previous rates and stating that she is "familiar with other attorneys in the local area who charge the same or approximately the same rate" of $300 to $325 per hour is insufficient to establish her claimed fee. *See* Whiteleather Dec. ¶ 6.